UNITED STATES of America, Plaintiff–Appellee,

v.

Edward SUA, Defendant–Appellant.

United States of America, Plaintiff–Appellee,

v.

Raymond Pulu, Defendant–Appellant.

Nos. 00–10088, 00–10089.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 2002.

Filed Oct. 9, 2002.

---

Sarah Courageous, Elizabeth A. Fisher and Arthur E. Ross, Honolulu, HI, for the defendants-appellants.

Craig H. Nakamura and Edward H. Kubo, Jr., United States Attorney, Honolulu, HI, for the plaintiff-appellee.

Before: WALLACE, TASHIMA and TALLMAN, Circuit Judges.

WALLACE, Senior Circuit Judge.

A federal jury convicted Sua and Pulu of conspiring and attempting to possess cocaine and methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Sua and Pulu were sentenced to 336 months and 188 months respectively. Here they appeal their convictions and sentences. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## I.

On June 29, 1988, Bobby Chalk arrived at the Honolulu International Airport on a flight from Los Angeles. Law enforcement authorities stopped him, searched his luggage, and found large quantities of methamphetamine and cocaine. After he was arrested, he admitted to carrying illegal drugs from Los Angeles to Hawaii for Jose Sanchez and agreed to help the authorities identify other participants in the drug conspiracy by simulating a drug delivery.

Later that evening, Sanchez called Chalk at the Airport Holiday Inn to give him delivery instructions. At the appointed time, Sua approached the hotel in a small Honda that matched the description given by Sanchez. Sua abruptly sped away, but was stopped and arrested.

The officer who stopped Sua saw a black Impala drive by while he was making the arrest. He had seen the Impala circling the hotel earlier and noticed that the driver, Kaisa Tai, matched the description of a person that met with Sanchez earlier in the day. He directed other officers to arrest the occupants of the Impala. Officers stopped the Impala and arrested its four occupants, including Pulu.

## II.

██ Before trial, Tai entered into a negotiated settlement with the government. He agreed to plead guilty to the attempted cocaine possession charge and to testify at trial against his codefendants. In exchange, the government agreed to dismiss the attempted methamphetamine possession and conspiracy counts. Sua argued during his trial that Tai's plea agreement should be admitted under FED. R. EVID. 801(d)(2) as a statement by a party-opponent, the government. Sua contended that the plea agreement was an admission by the government that Tai was not guilty of the methamphetamine conspiracy or attempted possession counts. If the government knew that Tai was not guilty of these counts, Sua argues, it surely knew that Sua was not guilty of them either. The district court excluded Tai's plea agreement and Sua requests reversal. We review this evidentiary ruling for an abuse of discretion. *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir.1997), *cert. denied*,

522 U.S. 851, 118 S.Ct. 141, 139 L.Ed.2d 89 (1997).

◼ While we have not addressed this particular issue before, one of our sister circuits has. In *United States v. Delgado,* 903 F.2d 1495, 1499 (11th Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991), the Eleventh Circuit rejected the argument that a plea agreement was an admission by the government under FED. R. EVID. 801(d)(2). It refused to attribute the government's decision not to prosecute a defendant to a belief of the defendant's innocence of the charges dropped. *Delgado,* 903 F.2d at 1499. After all, many factors influence the government's decision to plea bargain, "one of the most common being the government's interest in obtaining the cooperation of the defendant as a witness against codefendants." *Id.* The Eleventh Circuit further reasoned that even if the plea agreement was an admission, or fell into an exception of the hearsay rules, the plea agreement can properly be excluded under FED. R. EVID. 403. *Delgado,* 903 F.2d at 1499.

We need not reach the soundness of *Delgado*'s suggestion that plea agreements are not admissions because they do not necessarily establish the government believed the defendant was innocent of the charges dropped. Rather, we embrace *Delgado*'s holding that a district court may properly exclude, under FED. R. EVID. 403, a plea agreement offered for the purpose of establishing the government's belief in a person's innocence. *Delgado,* 903 F.2d at 1499. In the case before us, the district court ruled that admitting the plea agreement into evidence "would be confusing to the jury and not in the interest of justice." The district court did not abuse its discretion in excluding the plea agreement under FED. R. EVID. 403 because its low probative value is substantially out-weighed by "confusion of the issues, or misleading the jury, or by considerations of undue delay...."

◼ Pulu argues that the exclusion of the plea agreement denied his right to a fair trial because it kept relevant facts from the jury and violated his right to confront witnesses against him. However, the Confrontation Clause "does not guarantee unbounded scope in cross-examination." *United States v. Lo,* 231 F.3d 471, 482 (9th Cir.2000). Pulu's right to confrontation was violated only if the district court abused its discretion in excluding relevant evidence where other legitimate interests do not outweigh Pulu's interest in presenting any evidence. *United States v. Munoz,* 233 F.3d 1117, 1134 (9th Cir.2000); *Wood v. Alaska,* 957 F.2d 1544, 1549–50 (9th Cir.1992). Because the interests against confusing the jury and causing undue delay are legitimate interests that outweigh Pulu's interest in presenting the marginally relevant evidence, Pulu's right to confrontation was not violated. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, ... confusion of the issues, ... or interrogation that is repetitive or only marginally relevant."); *United States v. Jenkins,* 884 F.2d 433, 438 (9th Cir. 1989), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989) ("the test for assessing whether a district court abused its discretion under FED. R. EVID. 403 by limiting cross-examination is substantially the same as the test for assessing whether the district court violated the confrontation clause by limiting cross-examination....").

◼ Pulu also argues that the exclusion of Tai's plea agreement violates the principles of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* prohibits the "suppression by the prosecution of evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punish-

ment...." *Id.* at 87, 83 S.Ct. 1194. Because the evidence was not suppressed by the government, but was excluded from evidence by the district court, there was no *Brady* violation.

### III.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Sua and Pulu contend that their sentences were contrary to *Apprendi* because a fact that might have exposed them to a higher sentence—drug quantity—was not proven to a jury beyond a reasonable doubt.

Since neither defendant raised the *Apprendi* argument before the district court, we review for plain error. Under this standard, Sua and Pulu "must establish an error, that was plain, and that affected [their] substantial rights." *United States v. Buckland*, 289 F.3d 558, 563 (9th Cir.2002) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002); *see also United States v. Cotton*, 535 U.S. 625, ——, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002). If they succeed, we may correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Buckland*, 289 F.3d at 563, *quoting United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The maximum sentence under 21 U.S.C. § 841 where drug quantity is not alleged or proved to a jury beyond a reasonable doubt is twenty years. 21 U.S.C. § 841(b)(1)(C). Pulu was sentenced to 188 months imprisonment, or just over fifteen years. Since Pulu's sentence was not beyond the prescribed statutory maximum, it did not violate *Apprendi*. *United States v.*

*Garcia–Sanchez*, 238 F.3d 1200, 1201 (9th Cir.2001). Pulu also argues that his five-year supervised release term violates *Apprendi* because it is above the three-year maximum for "Class C" felonies identified in 18 U.S.C. § 3583(b)(2). There was no *Apprendi* error in Pulu's supervised release term, however, because the specific supervised release provisions of 21 U.S.C. § 841 trump the more general provisions contained in 18 U.S.C. § 3583(b)(2). *United States v. Barragan*, 263 F.3d 919, 925–26 (9th Cir.2001). Indeed, 21 U.S.C. § 841(b)(1)(C) requires "at least" three years of supervised release. Thus, there was no error, plain or otherwise.

Sua was sentenced to 336 months or twenty-eight years imprisonment. However, because Sua was convicted of multiple counts, U.S. Sentencing Guidelines Manual § 5G1.2(d) requires Sua, whose guideline sentence is greater than the statutory maximum, to be sentenced consecutively on each count to the extent necessary to reach the guideline range. Since Sua was convicted of three counts, the sentencing judge would have been obligated to reach the total sentence of 336 months by stacking his counts under section 5G1.2(d). Each consecutive sentence would not have exceeded the statutory maximum, and thus the *Apprendi* rule would not have been implicated. *Buckland*, 289 F.3d at 570–72.

### IV.

Pulu argues that the district court erred by not instructing the jury that defendants must have known the drug type and quantity to be convicted under 21 U.S.C. § 841. Since Pulu did not raise this argument in the district court, our review is for plain error. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

Traditionally, the mens rea of a crime extends to each element of that crime.

Model Penal Code § 2.02(1). Pulu contends that we should apply the mens rea element in 21 U.S.C. § 841 to drug type and quantity because, in the wake of *Apprendi*, drug type and quantity are elements of a 21 U.S.C. § 841 offense—at least in cases where a defendant's sentence is beyond the statutory maximum. We rejected this argument in *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir.2002):

> *Apprendi* did not change the long established rule that the government need not prove that the defendant knew the *type* and *amount* of a controlled substance that he imported or possessed; the government need only show that the defendant knew that he imported or possessed *some* controlled substance.

There was no error, and therefore no plain error, in not instructing the jury on this issue.

### V.

■ Pulu further argues that the district court's failure to instruct the jury that the government had to prove that he knew the drug type and quantity constructively amended the indictment because the indictment specified drug type and quantity. The indictment was not constructively amended, however, because Pulu's knowledge of drug type and quantity, as we have already discussed, was not "essential" to his conviction under 21 U.S.C. § 841. *United States v. Antonakeas*, 255 F.3d 714, 721–22 (9th Cir.2001).

■ Finally, Pulu argues that the evidence at trial was materially different from the indictment because there was insufficient evidence to show that Pulu had the requisite mens rea to be convicted of conspiracy to possess methamphetamine as well as attempt to possess methamphetamine. Pulu's argument cannot stand because we have already held that the government did not need to prove that he knew what type of drug he was dealing. The proof at trial was not materially different from the indictment.

AFFIRMED