**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 08-15634 |
| | D.C. Nos. |
| v. | 2:04-CV-02090-FCD-CMK |
| | 2:98-CR-00431-FCD-CMK |
| JOHN WESLEY JINGLES, *Defendant-Appellant*. | |
| | ORDER AMENDING OPINION AND AMENDED OPINION |

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

Argued March 13, 2012
Submitted June 8, 2012—San Francisco, California

Filed June 8, 2012
Amended November 19, 2012

Before: J. Clifford Wallace, Dorothy W. Nelson,
and Carlos T. Bea, Circuit Judges.

Order;
Amended Opinion by Judge Wallace

## SUMMARY[*]

**Habeas Corpus**

The panel affirmed the district court's denial of a 28 U.S.C. § 2255 motion to set aside convictions and sentences for two counts of possession with intent to distribute cocaine base.

Jingles contended in his § 2255 motion that the verdict forms constructively amended the indictment in violation of his Fifth Amendment rights by asking the jury to determine whether the substance he possessed was cocaine base, and to determine the amount of that substance, even though the indictment charged only that he possessed with intent to distribute a certain amount of cocaine.

The panel first held that Jingles had not procedurally defaulted his claim because, although he framed the issue on direct appeal as a variance claim, the substance of that argument was that the indictment was constructively amended. The panel concluded that a previous panel of the court resolved Jingles's constructive amendment claim by necessary implication when it concluded that the variance was harmless because the indictment gave Jingles adequate notice that he was being charged with possession of cocaine

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

base.  The panel held that it was precluded from reexamining the issue under the law of the case doctrine.  The panel explained that no exception to the law of the case doctrine applied because, even assuming that the previous panel's decision was clearly erroneous, its enforcement would not work any manifest injustice, because even without Jingles's conviction on those two counts, he would still have been subject to a life sentence and concurrent 520-year determinate term on other counts, and Jingles failed to identify any real collateral consequences resulting from the convictions.

## COUNSEL

Krista Hart, Sacramento, California, for Plaintiff-Appellant

Benjamin B. Wagner, United States Attorney; Jared C. Dolan (argued), Assistant United States Attorney, Sacramento, California, for Defendant-Appellee

## ORDER

The court's opinion filed June 8, 2012, is amended as follows: on slip opinion page 6521, line 16, replace "Like the petitioner in *Cotton*, Jingles did not preserve the issue in the district court, so like the claim in *Cotton*, Jingles's claim is subject to plain error review." with "Like the petitioner in *Cotton*, Jingles did not preserve the issue in the district court, so like the claim in *Cotton*, Jingles's claim was subject to plain error review."

**AMENDED OPINION**

WALLACE, Senior Circuit Judge:

Defendant-Appellant Jingles appeals from the denial of his motion to set aside his convictions and sentences for two counts of possession with intent to distribute cocaine base under 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. § 2253. We affirm.

After a jury trial, Jingles was convicted of a number of offenses relating to his participation in a conspiracy to traffic cocaine and cocaine base. The district judge sentenced Jingles to imprisonment for an aggregate term of 6,240 months (520 years) on the bulk of his counts, and to three terms of life imprisonment on counts two, twenty-one, and twenty-two. On direct appeal, we affirmed the judgment. *See United States v. Jingles (Jingles II)*, 64 F. App'x 82 (9th Cir. 2003) (mem.) (vacating and remanding sentence only to delete certain multiplicitous counts that did not affect the overall sentence). Acting pro se, Jingles subsequently filed a motion to correct or set aside the judgment pursuant to 28 U.S.C. § 2255. The United States Magistrate Judge (MJ) who first considered the motion recommended that it be denied. Jingles objected to the MJ's findings and recommendations, and the district court reviewed the motion de novo. The district court ultimately adopted the MJ's findings and recommendations in full and denied the motion.

Jingles sought a certificate of appealability from us pursuant to 28 U.S.C. § 2253(c). A motions panel of our court granted the certificate on the following issue: "whether the verdict forms in connection with counts twenty-one and twenty-two constructively amended the indictment in

violation of appellant's Fifth Amendment rights, including whether appellant procedurally defaulted this issue." Order at 1–2 (Sept. 18, 2009). Before we reach that question, we must decide whether Jingles presented this issue in his direct appeal. If so, we must decide whether the previous panel's decision rejecting the claim constitutes the law of the case and whether this would forbid Jingles's present collateral attack.

**I.**

Counts twenty-one and twenty-two of the superceding indictment charged Jingles with "Possession of Cocaine with Intent to Distribute." Count twenty-one charged:

> THAT JOHN WESLEY JINGLES, defendant herein, on an unknown date between on or about January 1 1996, and on or about June 30, 1996, in the State and Eastern District of California, did knowingly and intentionally possess with intent to distribute in excess of 500 grams of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Superceding Indictment at 23, *United States v. Jingles (Jingles I)*, No. 2:98-cr-431-FCD (E.D. Cal. Sept. 3, 1999). Count twenty-two was identical to count twenty-one, except that it charged a violation "between on or about January 1, 1996, and on or about June 30, 1998." *Id.* At trial, the judge gave the jury the following verdict form with three special interrogatories:

## **AS TO COUNT TWENTY-ONE OF THE INDICTMENT:**

_____GUILTY/NOT GUILTY of a violation of Title 21 U.S.C. § 841(a)(1) - Possession of Cocaine with Intent to Distribute

1. If your verdict as to Count Twenty-One is GUILTY, do you find beyond a reasonable doubt that the defendant possessed with intent to distribute cocaine powder or cocaine base?

   COCAINE POWDER _____
   YES/NO

   COCAINE BASE _____
   YES/NO

2. If you find that it was cocaine base, do you find beyond a reasonable doubt that the defendant possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base?

   _____
   YES/NO

3. If your verdict as to Count Twenty-One is GUILTY, but you do not find beyond a reasonable doubt that the defendant possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine

base, do you find beyond a reasonable doubt that the defendant possessed with intent to distribute 5 grams or more of a mixture or substance containing a detectable amount of cocaine base?

_____
YES/NO

Verdict at 11–12, *Jingles I*, No. 2:98-cr-431-FCD (June 1, 2001). The form of the verdict for count twenty-two was identical to the form of count twenty-one. The jury found Jingles guilty on both counts. As to the first special interrogatory, the jury responded on both counts that it did not find Jingles possessed cocaine powder and that it did find he possessed cocaine base. The jury answered "yes" to the second interrogatory on both counts. Accordingly, the jury did not answer the third special interrogatory on either count.

Possession with intent to distribute in excess of 500 grams of cocaine[1] is a violation of 21 U.S.C. § 841(a) punishable by imprisonment for a term not less than 5 years and not more than 40 years. 21 U.S.C. § 841(b)(1)(B)(ii)(II). Possession with intent to distribute in excess of 50 grams of cocaine base is also a violation of 21 U.S.C. § 841(a). However, at the time

_____

[1] "Cocaine base" as used in the indictment is *not* merely a type of the more general substance "cocaine." Rather, in the indictment, the word "cocaine" by itself clearly refers to "cocaine powder," while "cocaine base" refers to crack cocaine and related drugs. As the Supreme Court recently explained, the two forms are chemically different. *See DePierre v. United States*, 131 S. Ct. 2225, 2228 (2011).

of Jingles's alleged crime,[2] such a violation carried a minimum prison sentence of ten years and a maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(iii). Jingles received the maximum sentence of life imprisonment on both counts.

## II.

Jingles did not object to the jury verdict at trial. Therefore, if he raised the claim on direct appeal, it was subject to review only for plain error. Fed. R. Crim. P. 52(b); *see also United States v. Cotton*, 535 U.S. 625, 631 (2002). The government argues that Jingles raised the issue on direct appeal and that the court rejected his argument. Jingles, on the other hand, argues that his appellate counsel failed to raise the issue.

If Jingles did raise this issue on direct appeal and the previous panel addressed it, then that decision is the law of the case. *See In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996) ("[T]he decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case" (quoting *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993))); *see also Odom v. United States*, 455 F.2d 159, 160 (1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255

---

[2] The statute has since been amended to increase the threshold quantity for cocaine base to 280 grams. All citations to 21 U.S.C. § 841 refer to the versions in force between January 1, 1996 and June 30, 1998 (the period during which Jingles was charged to have committed his crimes). During that period, the statute was amended twice, but neither of those amendments affected the provisions relevant to Jingles.

motion"). On the other hand, if Jingles did not raise this issue but could have, then we must determine whether the default precludes him from raising the issue now. *See United States v. Bousley*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal" (internal quotation marks omitted)).

On direct appeal, Jingles argued that the trial court committed plain error when it presented verdict forms for counts twenty-one and twenty-two that allowed the jury to convict on the basis of finding that Jingles possessed with intent to distribute in excess of 50 grams of cocaine base, even though the indictment charged only that he possessed with intent to distribute in excess of 500 grams of cocaine. *See* Brief for Appellant at 24–27, *Jingles II*, 64 F. App'x 82 (No. 01-10703), 2002 WL 32113506 at *24–27. Jingles argued,

> In this case, the government indicted appellant in two counts for a violation of section 841(a)(1) based upon 500 grams of cocaine. Yet the district court, in turn, sentenced appellant to a life term based upon the jury's finding that appellant possessed in excess of 50 grams of cocaine base. Consequently, appellant received a sentence for a crime with which he was not charged, and was not convicted.
>
> The Fifth Amendment to the United States Constitution requires that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Supreme

Court has explained, "that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him," *United States v. Stirone*, 361 U.S. 212, [217] (1960).

*Id.* at 25. Jingles went on to argue that the district court lacked jurisdiction to try him for the cocaine base offense because that offense was not included in the indictment. *Id.* at 26. He concluded,

What was alleged here, and what defendant was sentenced for are two different crimes and the district court exceeded its jurisdiction in sentencing appellant for a crime with which he was never charged, thus depriving him of the constitutional right to "answer" only for those crimes presented to the grand jury.

*Id.* at 27.

As on direct appeal, the thrust of Jingles's argument in his collateral attack is that his convictions on counts twenty-one and twenty-two violated the Fifth Amendment's indictment requirement under *United States v. Stirone*, 361 U.S. 212 (1960). There are few differences between Jingles's previous argument and his current one. On direct appeal, Jingles characterized the alleged Constitutional violation as a "fatal variance" from the indictment, *see* Brief for Appellant at 24, *Jingles II*, 64 F. App'x 82, whereas now he characterizes the alleged violation as a "constructive[] amend[ment]" to the indictment. Also, Jingles no longer argues that the district court lacked jurisdiction. Rather, he argues that the

constructive amendment was a structural error requiring automatic reversal.

Comparing the direct appeal with Jingles's habeas petition, we hold that the issues presented are essentially the same. While Jingles labeled his original argument as a variance claim, the substance of that argument was that the indictment was constructively amended. Because Jingles presented his claim on direct appeal, the issue is not barred here by a procedural default. However, the fact that Jingles already litigated this issue requires us to determine whether he is barred from relitigating it under the law of the case doctrine.

**III.**

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (alteration in original) (quoting *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)). A collateral attack is the "same case" as the direct appeal proceedings for purposes of the law of the case doctrine. *See Odom*, 455 F.2d at 160. Therefore, we must determine whether the panel that rejected Jingles's direct appeal actually decided this issue, either explicitly or by necessary implication.

Unfortunately, the previous panel's unpublished disposition did not expressly engage *Stirone*, the case upon

which Jingles primarily relied. *See Jingles II*, 64 F. App'x at 83. Our previous panel rejected this issue in one paragraph:

> Jingles' argument that there was a material variance between the jury's verdict and counts twenty-one and twenty-two of the indictment also fails. "[W]here the variance is not of a character which could have misled the defendant at trial, and there is no danger of double jeopardy . . . , the variance between indictment and proof is immaterial." *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir.1997) (citations and internal quotation marks omitted). The indictment provided sufficient notice that Jingles faced a cocaine base charge and the proof at trial did not vary from this charge. Additionally, the fact that the government was not required to prove possession of a specific substance further undermines Jingles' argument. *See United States v. Sua*, 307 F.3d 1150, 1155 (9th Cir.2002).

*Id.* (alterations in original). In other words, the panel concluded that the variance between the indictment and the proof did not affect Jingles's substantial rights under the Fifth Amendment. So the issue is whether the previous panel's ruling on a variance precludes our review of Jingles's constructive amendment claim. *See Lummi Indian Tribe*, 235 F.3d at 452 (holding that the law of the case doctrine will apply only if the decision resolved that issue by necessary implication).

It is difficult to discern a difference between what *Tsinhnahijinnie* termed a "fatal variance" and what *Stirone* termed a "constructive amendment." *Cf. United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) ("The line between a constructive amendment and a variance is at times difficult to draw"). A review of the history of the amendment/variance dichotomy reveals the reason for our perplexity. The problem is that, according to our definitions of the two terms, "variance" and "amendment" can, and often do, mean the same thing.

We first explained the difference between an "amendment" and a "variance" in *United States v. Von Stoll*, 726 F.2d 584 (9th Cir. 1984). We said:

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Id.* at 586 (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981)). We borrowed this language from the Sixth Circuit, which, in turn, took it from a decision by the D.C. Circuit, *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969).

In *Gaither*, the court reviewed the historical background of the two doctrines. According to *Gaither*, these doctrines had their genesis in the different purposes served by the Fifth

Amendment's indictment requirement. Requiring indictment by grand jury protects individuals by: (1) requiring the prosecutor to establish probable cause for prosecution to the satisfaction of a group of unbiased men and women, (2) enabling the accused to prepare a defense by giving notice of the precise conduct alleged, and (3) protecting against another prosecution for the same offense. *Id.* at 1066. As explained in *Gaither*,

> An amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution.

*Id.* at 1071–72 (internal footnotes omitted). The court explained that, prior to *Stirone*, the leading Supreme Court case of *Ex parte Bain* required automatic reversal if the indictment was amended. *Gaither*, 413 F.2d at 1072. Prosecutors avoided the automatic reversal rule by simply proving the facts which the amended indictment would have charged without changing the indictment's terms. *Id.* "Thus instead of an amendment, there is a variance. And the accepted rule is that a variance does not call for dismissal of the indictment except upon a showing of prejudice." *Id.* However,

> The *Stirone* case limited the use of this device. In that case, there was no actual amendment of the indictment—rather there was a variation in proof from the grand jury's

charge. However, the Supreme Court found the variance substantial enough to amount to a constructive amendment of the indictment, and relied on *Bain* in ordering the indictment dismissed. The reason given was not that the variance deprived the defendant of notice or protection against double jeopardy, but rather that it infringed his "right to have the grand jury make the charge on its own judgment."

*Id.* (italics added) (quoting *Stirone*, 361 U.S. at 218–19).

Thus, *Gaither*'s description of the difference between an "amendment" and a "variance" is somewhat misleading. As *Gaither* itself recognized, a "constructive amendment" is simply one kind of "variance"—that is, a variation in proof from the grand jury's charge. If the variation in proof results in an infringement of the right to have the grand jury make the charge on its own indictment, we call it a constructive amendment. Regardless of the name ascribed to it, courts faced with a variation in proof from the grand jury's charge must consider every way in which that variation might burden a defendant's substantial rights. Indeed, when we found a "fatal variance" in *Tsinhnahijinnie*, we referred to all three rationales for the indictment requirement: "The problem [with a variance in proof] would be that the defendant was not indicted for the crime proved, had no fair notice, and would lack double jeopardy protection against an indictment for the . . . crime if he won acquittal." 112 F.3d at 992.

As mentioned above, the historical difference between a constructive amendment and a variance has been that the former requires automatic reversal while the latter does not. *See Adamson*, 291 F.3d at 615 ("[The line between a

constructive amendment and a variance] is significant because, whereas a constructive amendment always requires reversal, a variance requires reversal only if it prejudices a defendant's substantial rights" (internal quotation marks omitted)). Under *Bain* and *Stirone*, a constructive amendment requires automatic reversal. *See Gaither*, 413 F.2d at 1072. A variance, on the other hand, is harmless if the indictment gave the defendant adequate notice of the charges and there was no risk of double jeopardy if the defendant had been acquitted. *See id.*; *see also Berger v. United States*, 295 U.S. 78, 82 (1935).

In terms of reviewing for harmless error, requiring automatic reversal for a constructive amendment makes sense. As already explained, a constructive amendment is simply a variance that has resulted in the denial of a defendant's right to the popular judgment of a grand jury. If, in a particular case, a court concluded that a variance amounted to a constructive amendment, it would already have determined that the variance resulted in denial of a substantial right and, therefore, that the error was not harmless. However, the automatic reversal rule was not adopted using harmless error analysis. Rather, the Supreme Court originally adopted that rule on the grounds that a trial court would lack jurisdiction to try a defendant for a charge not included in the indictment. *See Ex parte Bain*, 121 U.S. 1, 13 (1887). The Supreme Court overruled this jurisdictional justification for the rule in *United States v. Cotton*, 535 U.S. 625, 630–31 (2002).

In *Cotton*, the Supreme Court held, on plain error review, that a constructive amendment did not require automatic reversal. *Id.* The Court affirmed Cotton's conviction even though it found a constructive amendment, "because even

assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 632–33. Like the petitioner in *Cotton*, Jingles did not preserve the issue in the district court, so like the claim in *Cotton*, Jingles's claim was subject to plain error review. *Id.*

The upshot for Jingles's case is that the difference between a claim of constructive amendment and a claim of fatal variance, if any, is extremely slight. It is difficult to imagine a fatal variance (*i.e.* a variance that affects either the defendant's right to fair notice of the charges or the right to protection against double jeopardy) that would not also constitute a constructive amendment (*i.e.*, a variance that affects the defendant's right to the scrutiny of a grand jury). Conversely, it would be difficult to conceive of a scenario where a variance that does not affect the defendant's substantial rights of notice and protection against double jeopardy would nevertheless deny the defendant his right to the judgment of a grand jury. In other words, a court's conclusion that an indictment provided adequate notice and protection against double jeopardy necessarily implies that the variance did not deny the defendant his right to the popular scrutiny of the grand jury.

In this case, the previous panel concluded that the variance was harmless because the indictment on counts twenty-one and twenty-two gave Jingles adequate notice that he was being charged with possession of cocaine base. That holding would be inconsistent with an argument that the indictment denied Jingles the benefit of the popular scrutiny of a grand jury with respect to those charges. Therefore, the prior panel's decision resolved Jingles's constructive amendment claim by necessary implication. *See United States*

*v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument"). Our prior decision on Jingles's constructive amendment claim is the law of the case. Jingles had his bite at the apple, and we will not give him a second bite unless one of the exceptions to the law of the case doctrine applies.

We may decline to apply the decision of a previous panel of our court as the law of the case if "'(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Gonzalez v. Arizona*, — F.3d —, 2012 WL 1293149, at \*2 n.4 (9th Cir. Apr. 17, 2012) (en banc) (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)).[3] Jingles does not argue that an intervening change in law makes reconsideration of the previous decision appropriate, and the remand after Jingles's direct appeal did not involve any new evidence. He argues that the previous panel's decision is clearly erroneous and that its enforcement would work a manifest injustice.

---

[3] Some decisions of this circuit have listed the exceptions to the law of the case doctrine slightly differently. For example, *Lummi Indian Tribe* separates the question of whether the decision was clearly erroneous from the question of whether it would work a manifest injustice, and it also adds a "changed circumstances" exception. 235 F.3d at 452–53. Our en banc court, however, has consistently identified only three exceptions, and has treated the "manifest injustice" and "clearly erroneous" inquiries as two parts of the same exception. *See Gonzalez*, — F.3d —, 2012 WL 1293149, at \*2 n.4; *Jeffries*, 114 F.3d at 1492. We, therefore, adopt the formulation expressed in *Gonzalez* and *Jeffries*.

While one might doubt the correctness of our prior panel's decision, we need not decide whether it is clearly erroneous because, even if it were, its enforcement does not work any manifest injustice. If our prior panel had found either a fatal variance or a reversible constructive amendment on counts twenty-one and twenty-two, it would have vacated Jingles's convictions for those counts. But Jingles would still have been subject to a life sentence on count two,[4] and he would still have had to serve that life sentence concurrently with a sentence of imprisonment for a determinate term of 520 years on the other counts. Thus, granting relief on counts twenty-one and twenty-two would not have reduced the time Jingles must spend in prison. Even if we were to assume that the prior panel's decision is erroneous, and that Jingles was wrongfully convicted, vacating the convictions before us would not make Jingles any better off.

We recognize that, in some cases, a conviction may have "potential adverse collateral consequences" even if it does not add any time to the defendant's sentence. *See Ball v. United States*, 470 U.S. 856, 865 (1985). For example, in some cases, "the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense." *Id.* Parole, however, has not been a feature of criminal justice in the federal system for some time. *See* Comprehensive Crime Control Act of 1984, Pub. L. 98-473, 98 Stat. 1976 (replacing

---

[4] In his supplemental opening brief, Jingles contends that his conviction on count two must also be set aside because it is supported by counts twenty-one and twenty-two as predicate offenses. Jingles did not present this claim to the district court, and we did not include the issue in Jingles's certificate of appealability. Accordingly, we will not consider whether Jingles's conviction on count two should be vacated.

parole system with system of determinate sentence followed by supervised release for crimes committed after November 1, 1987). No recidivist statute can impose a heavier sentence for a future offense than the sentences Jingles is already serving. If there are any collateral consequences attending Jingles's convictions on counts twenty-one and twenty-two, they are not significant enough to constitute a manifest injustice. Jingles argues that our prior panel's decision works injustice because it involves the extinguishment of a constitutional right. But he does not identify any real consequences that result from the loss of that right.

Because our previous panel's rejection of Jingles's constructive amendment claim does not work a manifest injustice, we respect that decision as the law of the case. Jingles's motion under 28 U.S.C. § 2255 was properly denied.

**AFFIRMED.**