
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>YAFFA JAVEDANFAR and MORAD JAVEDANFAR,<br>                Debtors. | BAP No. CC-19-1265-TaFL |
| | Bk. No. 2:13-bk-27702-ER |
| | Adv. No. 2:15-ap-01363-ER |
| MBN REAL ESTATE INVESTMENTS, LLC,<br>                Appellant,<br>v.<br>JL AM PLUS, LLC,<br>                Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Gregg W. Zive, Bankruptcy Judge, Presiding

Before: TAYLOR, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

MBN Real Estate Investments, LLC ("MBN") appeals the bankruptcy

court's judgment awarding JL AM Plus, LLC ("JLAMP") actual damages

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

plus attorneys' fees and costs on its §§ 544(b), 548, and 550(a)[1] fraudulent transfer claims. MBN argues that the bankruptcy court erred by: (1) excluding its rebuttal expert witness; and (2) awarding JLAMP its fees and costs. We disagree and AFFIRM.

## FACTS[2]

Prepetition, Morad Javedanfar, debtor, and Morad Ben Neman, MBN's manager, invested in three parcels of real estate. Debtor obtained a partial fee interest in one of them and also acquired a partial interest in a limited liability company and a limited partnership that owned the others. Later and while insolvent, he transferred these interests to MBN under sale agreements; Neman was the MBN's manager at that time.

Within the year after the transfers, Debtor filed a chapter 7 petition. The chapter 7 Trustee timely filed an adversary proceeding against Neman and MBN to recover the transferred assets or their value under §§ 544(b), 547, 548(a)(1)(A), 548(a)(1)(B), and 550 and CCC §§ 3439 *et seq.*

A year later, the Trustee sold and assigned the adversary proceeding claims to a third party, which then assigned them to JLAMP. Standing in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "CCC" references are to the California Civil Code.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

the shoes of the Trustee, JLAMP filed a First Amended Complaint and alleged that Neman was liable as MBN's alter ego.

Thereafter, however, the bankruptcy court granted Neman summary judgment on JLAMP's alter ego claim. Neman capped his victory with a motion seeking attorneys' fees as the prevailing party. He argued, through counsel Neufeld Marks, that, even though he was not a signatory to the operative sales agreements, the attorneys' fee provision contained in each agreement entitled him to fees under CCC § 1717[3] and California Code of Civil Procedure § 1021. He relied on *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (1979), where the California Supreme Court held that CCC § 1717 allows a nonsignatory defendant to recover attorneys' fees if: (1) it was sued on a contract as if a party; and (2) the plaintiff would clearly be entitled to attorneys' fees if plaintiff prevailed. As relevant here, Neman conceded that had JLAMP been the prevailing party, it would have been entitled to attorneys' fees recovery under the relevant sale agreement. And while JLAMP opposed Neman's request for fees on the grounds that he was not a signatory to the sale agreements, it did not otherwise dispute his entitlement argument.

---

[3] California Civil Code section 1717(a) provides, in pertinent part, that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

The bankruptcy court granted Neman's fee motion. In doing so, it determined that "[t]he proper framing of the *Reynolds* inquiry is to ask whether the [*sic*] JLAMP, the opposing party, would be entitled to fees from Mr. Neman had it prevailed. The answer to that question is 'yes.'" It later granted another Neman fee motion.

After the summary judgment in favor of Neman, the litigation continued. Pursuant to the parties' stipulations, the bankruptcy court extended the expert witness disclosures deadline to February 7, 2018 and trial to July 30, 2018. Both MBN and JLAMP timely designated experts, but neither timely designated rebuttal experts within the time limits established by Civil Rule 26(a)(2)(D)(ii), made applicable by Rule 7026. And then on April 26, 2018, Neufeld Marks associated in as MBN's trial counsel.

On May 14, 2018—over two months after rebuttal expert designations were due—MBN requested JLAMP's agreement to allow it to untimely name rebuttal experts, including an appraiser. JLAMP refused in light of the looming trial date and an anticipated increase in costs. So MBN sought leave on May 24, 2018 to name experts on or before July 10, 2018 and for an extension of the expert discovery cutoff to allow depositions on July 12 and 13, 2018 - approximately two weeks before trial. The bankruptcy court denied the request, noting that MBN had "failed to show it acted diligently with respect to the rebuttal expert disclosure deadline."

The trial, however, did not proceed on July 30, 2018. Instead, after several trial continuances granted at MBN's request, the case was finally tried in February and May 2019. After trial, the bankruptcy court entered a memorandum decision, finding that JLAMP was entitled to judgment in the amount of $1,218,514.75, plus fees and costs.

The bankruptcy court noted several badges of fraud and MBN's failure to provide a "legitimate supervening purpose" and determined that the transfers were actually fraudulent. In finding the transfers also were constructively fraudulent, the bankruptcy court valued the transferred assets and determined that MBN did not provide appropriate consideration in exchange. In connection with its valuation determinations, it found JLAMP's experts most persuasive. It attributed minimal weight to MBN's expert given problems with both his credentials and methodology. And while it also allowed Neman and Debtor to give valuation testimony as owners, it discounted their opinions as neither had a documentary basis for their opinions nor training in valuation and because Neman previously pled guilty to four felonies involving dishonesty.

The finding that JLAMP was entitled to attorneys' fees and costs was more truncated. The bankruptcy court determined that JLAMP was the "prevailing party" compared with MBN and tacitly relied on its earlier evaluation of the contractual attorneys' fee provision in connection with Neman's fee requests. The bankruptcy court then instructed JLAMP to

submit evidence of its fees and costs and allowed MBN to submit any opposition to the reasonableness of such fees and costs. When MBN opposed the fee application, it never disputed JLAMP's contractual right to recovery. The bankruptcy court awarded JLAMP $595,120.87 in fees and costs.

The bankruptcy court entered judgment in JLAMP's favor, awarding it $1,813,635.62. MBN timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (F), (H), and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court abuse its discretion in precluding MBN from designating and proffering a rebuttal expert witness?

2. Did the bankruptcy court abuse its discretion in awarding JLAMP attorneys' fees and costs?

## STANDARDS OF REVIEW

We review the bankruptcy court's exclusion of an untimely-designated expert's testimony for an abuse of discretion. *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998). It abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d

6

820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We also review the bankruptcy court's decision regarding an award of attorneys' fees and costs for an abuse of discretion. *Redwood Theaters, Inc. v. Davison (In re Davison),* 289 B.R. 716, 720 (9th Cir. BAP 2003). But "[t]o the extent the issue is whether California law allows the award of attorneys' fees, our review is de novo." *Saccheri v. St. Lawrence Valley Dairy (In re Saccheri)*, BAP No. EC-12-1269-JuKiD, 2012 WL 5359512, at *5 (9th Cir. BAP Nov. 1, 2012) (citation omitted), *aff'd*, 599 F. App'x 687 (9th Cir. 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We may affirm on any basis supported by the record. *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008).

## DISCUSSION

A. The bankruptcy court properly excluded MBN's rebuttal expert.

MBN argues that the bankruptcy court abused its discretion in denying its request to belatedly designate and proffer a rebuttal valuation expert. We discern no abuse of discretion.

First, MBN timely designated a valuation expert. It claims that it was "handicapped in presenting its case, because it was unable to present expert testimony from a professional appraiser." While Judd Dunning, its

expert, was not an appraiser, he was qualified as an expert by the bankruptcy court, he gave valuation testimony at trial, and MBN repeatedly relied on his testimony in its closing brief and proposed findings and conclusions.

And we discern no abuse of discretion in the bankruptcy court's denial of MBN's request to untimely designate and proffer an additional rebuttal valuation expert. Civil Rule 26(a)(2)(D)(ii) provides that a rebuttal expert must be disclosed within 30 days after an opponent discloses an expert. Civil Rule 37(c)(1), made applicable by Rule 7037, provides that a party who fails to provide information or identify a witness under Rule 26(a) or (e) may not use the information or witness to supply evidence at trial "unless the failure was substantially justified or is harmless." The bankruptcy court has broad discretion to issue Civil Rule 37 sanctions. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In fact, "[c]ourts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." *Id.* (citation omitted). In that regard, exclusion can be "an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Id.*

MBN argued that its association of lead trial counsel after the rebuttal expert designation deadline justified an extension of the expired deadline. But the bankruptcy court soundly determined that MBN failed to show good cause for an extension of the deadline because MBN had other

sophisticated counsel when it missed the deadline.

And MBN's argument that delay in designating the rebuttal expert was harmless is an exercise in misdirection. Both in briefing and at oral argument, MBN emphasized that the bankruptcy court denied the extension, but "trial did not begin until February 2019, over seven months later." It further stressed that "[l]ate disclosure of expert witness evidence is harmless, if it occurs long before trial, and is likely subject to correction without materially prejudicing the opposing party." The logical inference from MBN's statements is that its requested extension of time to July 10, 2018 to designate the rebuttal expert came seven months before the trial date as scheduled at the time of decision. Not so. At the time of MBN's request, trial was set for July 30, 2018. Considering the facts before it at the time, the bankruptcy court properly concluded that granting the requested extension would harm JLAMP by forcing it to scramble on the eve of trial to digest new expert reports, take additional expert depositions, and potentially move to disqualify experts.

Trial was rescheduled from July 30, 2018, only after the bankruptcy court denied MBN's requested extension. MBN never renewed its request despite several trial continuances. The bankruptcy court had no obligation to revive the issue for MBN upon such trial continuances.

Based on the foregoing, we perceive no abuse of discretion in the bankruptcy court's denial of MBN's request for an extension of time to

designate a rebuttal valuation expert.[4]

B. The bankruptcy court properly awarded JLAMP fees and costs.

MBN argues that the bankruptcy court erred in awarding JLAMP fees and costs because the contractual fee provision does not apply in fraudulent transfer actions. We decline to address the argument based on the doctrines of waiver, law of the case, and judicial estoppel.[5]

1. MBN waived its challenge to JLAMP's entitlement to fees.

MBN waived its argument that JLAMP was not entitled to attorneys' fees and costs by failing to raise the issue in the bankruptcy court. Generally, we do not consider arguments that are not properly raised in the bankruptcy court. *Mano–Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014). Three narrow, discretionary exceptions to this general rule exist: (1) to prevent a miscarriage of justice or to preserve the

---

[4] We also note that even if the bankruptcy court had abused its discretion, its error was harmless. First, it allowed MBN's other witnesses to provide valuation testimony at trial. In addition, the judgment was not solely based on valuation findings. The bankruptcy court granted judgment in JLAMP's favor on both its constructive fraud claim and its actual fraud claim. In determining that the transfers were actually fraudulent, the bankruptcy court relied on several badges of fraud wholly independent of its valuation findings. Thus, contrary to MBN's assertion, the judgment was strongly supported independent of valuation analysis.

[5] We would affirm even if we reached the merits of MBN's argument. MBN relies on *Rothery v. Marshack (In re Rothery)*, 200 B.R. 644 (9th Cir. BAP 1996), in which we held that a fraudulent conveyance action under California's Uniform Fraudulent Transfer Act was not an "action on a contract" under CCC § 1717 such that a prevailing party could recover fees. *Penrod v. AmeriCredit Fin. Servs., Inc. (In re Penrod)*, 802 F.3d 1084 (9th Cir. 2015), undercut the reasoning of *Rothery,* effectively overruling it.

integrity of the judicial process; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law. *Id.*

MBN contends that it was deprived of the opportunity to raise the issue of the applicability of the fee provision below because the bankruptcy court found JLAMP was entitled to fees and costs in a memorandum decision without briefing on the issue. We disagree. MBN had multiple opportunities to raise the argument before the bankruptcy court made its finding in its memorandum decision. And it had an additional opportunity before the bankruptcy court liquidated the fee award.

First, MBN had an early opportunity to present its current argument in opposition to Neman's two motions for contractual attorneys' fees and costs. These motions required the bankruptcy court to determine whether the contractual fee provision would entitle JLAMP to attorneys' fees and costs if it was the prevailing party in the adversary proceeding. The bankruptcy court's ruling on Neman's motions had broad implications for all parties, including MBN. That MBN was not incentivized to do so because Neman, its principal, was using the sale agreements to recover fees does not diminish that it had a full and fair opportunity to make its current argument but declined to do so.

Neither did MBN take the opportunity to brief the issue later in its pre- and post-trial briefs. JLAMP prayed for fees and costs in its FAC and otherwise treated its entitlement to contractual fees as a given throughout

11

the case. Thus, the applicability of the contractual fee provision was directly at issue at trial. But MBN did not contest the issue and, instead, made its own request for fees in its post-trial brief. Further, it doubled down on its right to contractual attorneys' fees, stating that it believed "the transfer [of the Trustee's Claims] to [JLAMP] was instituted in order to prevent Defendants from collecting on legal fees in the event of a defense verdict. Indeed, one of the two attorneys' fees awards in favor of Mr. Neman remains unsatisfied." With this statement, MBN goes well beyond a reflexive and nonspecific fee request in its post-trial brief.

And finally, MBN had the opportunity to contest the applicability of the contractual fee provision in its post-trial opposition to JLAMP's application for fees and costs. MBN argues that it could not do so because the bankruptcy court only instructed it to brief the issue of the reasonableness of the fee request. We disagree. It could have, and should have, raised the issue by arguing that all fees and costs were unreasonable because no fees and costs were authorized under the fee provision. But doing so came with a risk; the bankruptcy judge might reconsider its award to Neman. And the bankruptcy court, almost certainly, would ask tough questions given the Neufeld Marks firm's assertion of polar-opposite positions on that very issue in this case. The facts here suggest not a waiver

through inadvertence but a strategic decision.[6] But even if the failure has a more benign aspect, we still decline to consider the argument for the first time on appeal.

Based on the foregoing, MBN waived its argument that the contractual fee provision does not allow attorneys' fee recovery in this adversary proceeding. We decline to exercise our discretion to consider the issue.

2. The bankruptcy court properly adhered to its prior rulings.

The law of the case doctrine also supports affirmance of the attorneys' fee award. The doctrine "posits that 'when a court decides [an issue], that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). And the doctrine can apply to both legal conclusions and factual determinations. *See Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1096-97 (9th Cir. 1994) ("A decision on a factual or legal issue must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court" unless a specific exception to the doctrine applies). It advances the "principle that in order

_____

[6] At oral argument, counsel for MBN argued that the about-face as to fee recovery was appropriate because Neman's request "should" have been denied. When questioned as to the Civil Rule 11 implications of this assertion, however, counsel quickly changed the statement to "could" have lost.

13

to maintain consistency during the course of a single lawsuit, reconsideration of [questions] previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (citation omitted). Stated differently, the doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (citations omitted).

Obviously, "[f]or the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication" in a previous phase of the case. *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (citation and internal quotation marks omitted). The doctrine is a discretionary tool subject to exceptions. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "Most often, we recognize exceptions to the law-of-the-case doctrine where the prior decision is 'clearly erroneous' and enforcing it would create 'manifest injustice'; intervening, controlling authority encourages reconsideration; or substantially different evidence is produced at a later merits trial." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1261 (9th Cir. 2020) (citation omitted). Courts are also reluctant to apply the doctrine to prevent a party from raising an argument it had no opportunity to raise earlier. *See, e.g., White v. Sabatino*, 526 F. Supp. 2d 1143, 1152 (D. Haw. 2007). However, where a party has had a full and fair opportunity to litigate an issue, the doctrine may prevent a party "from offering new theories going to the same issue it already litigated." *Cape*

*Flattery Ltd. v. Titan Mar. LLC*, No. 08-00482 JMS/KSC, 2012 WL 3113168, at *7 (D. Haw. July 31, 2012).

Here, MBN was a named defendant from the beginning of the adversary proceeding, long before Neman brought his fee motions. MBN had the opportunity to argue the inapplicability of the fee provision by filing a response to these motions—but it chose not to do so. And neither did it brief the issue later in its pre-trial and post-trial briefs. Nor did it raise the issue in its objection to the reasonableness of JLAMP's fees. As MBN provided the bankruptcy court with no reason to depart from its earlier ruling regarding the applicability of the fee provision in the adversary proceeding, the bankruptcy court properly relied on its prior rulings.

3. MBN is judicially estopped from contesting the fee award.

We also decline to entertain MBN's challenge to JLAMP's entitlement to fees under the principles of judicial estoppel, as articulated by the Supreme Court:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another

phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations and quotation marks omitted).

Judicial estoppel is an equitable doctrine invoked by a court at its discretion "to protect against a litigant playing fast and loose with the courts." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). "[J]udicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion." *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997).

And judicial estoppel may apply not only to actual parties asserting incompatible positions but also to those in privity with them. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012); *Maitland v. Univ. of Minn.*, 43 F.3d 357, 363-64 (8th Cir. 1994) (under the doctrine of judicial estoppel, "the party who is to be estopped, *or one in privity with that party*, must have asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated." (emphasis added)); *Bison Res. Corp. v. Antero Res. Corp.*, No. 1:16CV107, 2017 WL 1164500, at *5 (N.D. W. Va. Mar. 28, 2017); *Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 348 (D. Md. 2003). "Privity permits 'a non-party to an action . . . [to] be bound by the issues decided there if it substantially controls, or is represented by, a party to the action.'"

16

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1169 (C.D. Cal. 2008) (quoting *United States v. Bonilla Romero*, 836 F.2d 39, 43 (1st Cir. 1987)), *aff'd sub nom. Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983. "The party estopped due to representation by a party to the action must have been 'so closely related to the interest of the party to be fairly considered to have had his day in court.'" *Id.* (quoting *Bonilla Romero*, 836 F.2d at 43).

The justification for applying the equitable doctrine of judicial estoppel is present here. At least until the bankruptcy court granted Neman's fee motions, Neman was both the manager of MBN and the trustee of the trusts that owned MBN. And during oral argument, MBN acknowledged that Neman controlled MBN. Thus, Neman held positions of substantial control over MBN during the litigation. Further, Neman's defense counsel, Neufeld Marks, successfully argued (on Neman's behalf) that the fee provision applies in the adversary proceeding and now (on MBN's behalf) is taking the inconsistent position that it does not apply. To permit MBN and its counsel to take such wholly inconsistent positions—particularly when they do so for the first time on appeal—would endorse what is charitably described as questionable behavior. We will not do so.

## CONCLUSION

Based on the foregoing, we AFFIRM.