**PUBALI BANK, Plaintiff-Appellee,**

v.

**CITY NATIONAL BANK, the Aristos Group, Jack A. McGuire, and Margo Svikhart, Defendants,**

**City National Bank, Defendant-Appellant.**

**PUBALI BANK, Plaintiff-Appellee,**

v.

**The ARISTOS GROUP, Defendant-Appellant.**

**Nos. 84–5912, 84–5938.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided Aug. 22, 1985.

Don A. Proudfoot, Los Angeles, Cal., for plaintiff-appellee.

James P. Tierney, Santa Monica, Cal., Bruce E. Clark, Los Angeles, Cal., for defendant-appellant.

Before GOODWIN, NELSON and BOO-CHEVER, Circuit Judges.

GOODWIN, Circuit Judge.

This case is before us for the second time. After our remand order in *Pubali Bank v. City National Bank*, 676 F.2d 1326 (9th Cir.1982) (*Pubali I*), the district court granted summary judgment to Pubali. We affirm.

Pubali began this action in 1978 for breach of contract, fraud, money had and received and negligent misrepresentation. Pubali had arranged for Manufacturers Hanover Bank to issue two stand-by letters of credit on behalf of its customer, Emerald, Inc. In its complaint, Pubali alleged that Aristos and its bank, City National Bank (CNB), in conjunction with actions taken by individual defendants, drew down the two letters of credit even though they knew that Emerald had met the contractual obligations which the letters guaranteed.

The dispute between Emerald and Aristos and CNB centered on the meaning of the term "freight earned per contract." Emerald contracted with Aristos for the charter of two ships to transport jute from Bangladesh to Syria. The letters of credit

issued by Manufacturers Hanover Bank specified that Emerald would pay Aristos a specific amount for "freight earned per contract" for each charter. According to the parties' agreement, only if those amounts were not paid could Aristos and CNB draw down the letters of credit.

Emerald paid Aristos the amount specified on each letter. Extra charges arose, however, for demurrage, for which Emerald did not pay Aristos. Aristos and CNB maintain, and the district court found, that "freight earned per contract" included demurrage costs. Under this interpretation, as long as Aristos was not paid for demurrage, Emerald had not met its obligations and Aristos and CNB were justified in drawing down the letters of credit.

At the close of Pubali's case, defendants successfully moved for an involuntary dismissal. Because the district court finding was clearly erroneous, we reversed and remanded. We further held that CNB's role was not merely that of an advisor bank to Aristos but also that of an assignee who held a direct interest in payment, on these letters, of Aristos by Pubali. CNB was thus jointly liable with Aristos for Pubali's damages. We addressed standing in a footnote, observing that Pubali had standing under the Uniform Commercial Code. 676 F.2d at 1329 n. 5.

On remand before a different trial judge, Pubali moved for summary judgment. Applying the law of the case doctrine, the judge concluded that he was bound, by our decision in *Pubali I*, to find that Pubali had met its obligations and that CNB and Aristos were liable for damages suffered by Pubali when Manufacturers Hanover Bank honored the letters of credit and offset Pubali's account in those amounts. The judge granted partial summary judgment against CNB and Aristos on the breach of contract and fraud claims. He stayed the proceedings on the other claims and against individual defendants to permit CNB and Aristos to take this appeal from the summary judgment.

Under the law of the case doctrine "a decision of a legal issue or issues by an appellate court ... must be followed in all subsequent proceedings in the same case ... unless the evidence on a subsequent trial was substantially different...." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir.1982), (quoting *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967)). *See Handi Investment Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir. 1981).

When, as in this case, the plaintiff moves on remand for summary judgment, the trial judge may decide the motion in accordance with the law of the case, based on the appellate conclusions, if no evidence that affects the appellate ruling is offered in opposition to the summary judgment. *United States v. United States Gypsum Co.*, 340 U.S. 76, 86, 71 S.Ct. 160, 168, 95 L.Ed. 89 (1950). The trial court cannot grant the motion solely in reliance on the appellate holdings; it must examine whatever materials the defendant presents in opposition to the summary judgment. If that material produces no new evidence and evinces no factual dispute, the resolution of which might change the law applied by the appellate court, the trial court should enter judgment for the plaintiff as a matter of law. *See id.* It is not clear in this case whether the district court properly examined defendants' material in opposition to summary judgment, or simply applied the holding of *Pubali I* to Pubali's motion papers. We examine the problem afresh because we review a summary judgment de novo, *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 720 (9th Cir.1984), and we can affirm on any basis revealed in the record. *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1308 (9th Cir.1982).

In this case, the *Pubali I* conclusions apply unless CNB and Aristos have produced evidence indicating that (1) the parties meant "freight earned per contract" to include demurrage; (2) Aristos and CNB did not know Aristos had been paid for the shipments (except for demurrage) when they drew down the letters of credit; (3) CNB was not acting in its own interest

when it countersigned the beneficiary statements; and (4) the parties' choice of law precludes Pubali from having standing. We begin with the question of standing.

In *Pubali I*, we determined that standing existed under § 5-111 of the Uniform Commercial Code which provides that a beneficiary warrants his statements to all interested parties. We noted that the category of interested parties "certainly includes Pubali in view of its indemnification of [Manufacturers]." 676 F.2d at 1329 n. 5.

■ In opposition to summary judgment CNB and Aristos have attacked Pubali's standing on two grounds. First, they claim that Emerald and Aristos intended the contract to be governed by the Uniform Customs and Practice for Commercial Documentary Credits, under which the Uniform Commercial Code may not apply. Second, they argue that Pubali is not an interested party because it neither applied for nor issued the letters of credit. We need not address the question whether the Uniform Commercial Code applies. Independent of the Uniform Commercial Code, Pubali has a substantial interest in the contract between Emerald and Aristos. This interest is sufficient to give Pubali standing to sue Aristos and CNB.

■ The components of standing are well established. A plaintiff must have suffered a distinct and palpable injury, there must be a causal connection between the injury and the defendants' conduct and there must be substantial likelihood that the relief requested will offer redress. *NAACP v. City of Richmond,* 743 F.2d 1346, 1350 (9th Cir.1984). *See Valley Forge Christian College v. Americans United, etc.,* 454 U.S. 464, 471-76, 102 S.Ct. 752, 757-61, 70 L.Ed.2d 700 (1982). All three requirements are met here. First, Pubali was injured when Manufacturers offset Pubali's account in the amount of the letters of credit. Second, this injury is clearly traceable to the actions of Aristos and CNB in wrongfully drawing down the letters of credit. Third, the damages requested will offer redress to Pubali.

CNB and Aristos rely on *Barclays Bank v. Mercantile National Bank,* 481 F.2d 1224, 1239 n. 21 (5th Cir.1973), for the proposition that a letter of credit is completely independent from the underlying agreement or contract it guarantees, and thus that a party with an interest in a letter of credit is not necessarily a party to disputes over the underlying contract. In this case, however, Pubali stands in the shoes of an issuing bank because it arranged for Manufacturers, at the risk of Pubali's own ultimate liability, to be the issuer. Consequently, Pubali involuntarily reimbursed Manufacturers when the letters were drawn down. That liability obviously gives Pubali an interest in the underlying contract and the related transactions among Aristos, CNB and Manufacturers. This interest confers standing.

With regard to the expenses covered by the letters of credit, CNB and Aristos have presented no material which is significantly different from the record upon which we based our decision in *Pubali I*. Nor have they shown errors in the factual assumptions underlying our conclusion in *Pubali I* that "[i]f demurrage [as well as freight] was to be covered by the letters of credit the letters could and should have included a specific amount or other provision for demurrage," and that "all concerned distinguished between the two classes of charges until a dispute arose." 676 F.2d at 1329. Instead their evidence consists essentially of declarations about what the letters were intended to cover and what the expression "freight earned per contract" is commonly understood to mean. None of this changes the factual premises of our opinion in *Pubali I*.

■ The letters of credit were written to cover only a certain amount and Emerald paid Aristos those amounts in full. There is no dispute that Emerald owes Aristos money above and beyond the amounts on the face of the letters of credit. Other amounts owing, however, do not justify drawing down the letters which were standby guarantees for particular debts which had been honored fully. CNB and

Aristos still offer no plausible explanation for why, if the letters of credit were intended to cover demurrage and other incidental charges, they did not specify that they would be adjusted if necessary to include demurrage, or they were not made out "in the amount of the loan" instead of for a specific amount. The declarations submitted on this issue indicate nothing more than that Aristos bargained that the total cost would not exceed the amount of the letters of credit. There is no basis in the record for Aristos' argument that because the total cost of the charters was more than the letters covered, Pubali is estopped from protesting Aristos' and CNB's improperly drawing down the letters.

Nor have CNB and Aristos presented new evidence on the question of whether they knew Aristos had been paid when they drew down the letters of credit. Some of CNB's evidence, favorably interpreted, suggests that because confusion arose about whether Aristos had assigned to CNB an Emerald payment, CNB officials may have thought Emerald had not paid Aristos. No new facts have been alleged, however, which disprove Pubali's evidence that both Aristos and CNB knew Emerald had been paid the full amount of the letters of credit.

Finally, CNB has not alleged facts which undermine our earlier conclusion that CNB acted in its capacity as Aristos' assignee when it drew down the letters of credit. CNB's evidence tends to show that an attempt at formal assignment had been rejected by CNB because it was not properly signed by Emerald. However, CNB has made no attempt to rebut Pubali's allegation that after CNB received the funds from Manufacturers it used them to repay itself the money it had lent to Aristos. Whether or not there was a formal assignment, the record is still clear that CNB acted not solely as an advising bank, but also on its own behalf and thus that it shared liability with Aristos.

In their opposition to summary judgment and on appeal, Aristos and CNB have failed to present any significant evidence not available when *Pubali I* was decided. Their after-the-fact, unsupported explanations of intent do not counter the facts which we held in *Pubali I* were sufficient to invoke their liability. The partial summary judgment is affirmed.