**ELK MOUNTAIN SAFARI, INC., a Wyoming corporation, and Palm Livestock Co., a Wyoming corporation, Plaintiffs,**

v.

**UNITED STATES of America, DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, Defendants.**

No. C85–422–K.

United States District Court, District of Wyoming.

Oct. 2, 1986.

---

Thomas N. Long of the firm Hirst & Applegate, Cheyenne, Wyo., for plaintiffs.

Richard Stacy, U.S. Atty., D. Wyo., and Gina Guy, Regional Sol., Rocky Mountain Region, U.S. Dept. of Interior, Denver, Colo., for defendants.

## MEMORANDUM OPINION

KERR, District Judge.

This case arises over a dispute as to the effect and extent of an easement and right-of-way executed on March 9, 1957 by Norman Palm as grantor, to the United States of America as grantee. The easement for a right-of-way or access road traverses real property owned by the plaintiff, Palm Livestock Company, in Carbon County, Wyoming, sections 23 and 25, Township 20 North, Range 82 West, 6th Principal Meridian. Plaintiffs have brought suit to quiet title pursuant to 28 U.S.C. § 2409a seeking both injunctive relief and declaratory relief as to the scope of said easement. Plaintiffs take the position that the easement specifically limits the Bureau of Land Management's right to use the roadway for administration of public lands pursuant to the acts specified in the easement. However, the defendants claim that the easement is broad and encompasses a right of public access to use the roadway.

## FACTS

The plaintiff Elk Mountain Safari, Inc. (Safari) is a Wyoming corporation engaged in the business of recreational services upon the lands of its shareholders and provides guide services for hunting, fishing and white water rafting expeditions.

The plaintiff Palm Livestock Company (Palm Livestock) is a closely-held family corporation organized under the laws of Wyoming in 1965. Palm Livestock is engaged in agricultural business and holds BLM grazing rights pursuant to the Taylor Grazing Act on neighboring public lands, as well as maintaining leases on neighboring Union Pacific and Wyoming state lands.

The defendant Bureau of Land Management (BLM), United States Department of the Interior, acquired the easement from Norman Palm and is generally referred to as the grantee in this matter.

Palm Livestock's private lands, previously described, are component parcels of the "checkerboard" land grant system created by the Union Pacific Act of 1862, ch. 120, 12 Stat. 489. This land grant resulted in a pattern of public and private ownership of alternating sections of land. The map attached as Appendix A exemplifies the checkerboard pattern and designates the course of the roadway in question. The roadway—subject of the easement—tra-

verses Palm Livestock land, sections 23 and 25, as well as sections owned by the Union Pacific, the State of Wyoming, and lands owned by the United States and administered by the BLM. This general vicinity is referred to as "Elk Mountain."

The roadway was initially built and used privately as a logging road until sometime in the mid–1950's. The roadway as now established is effectively the only accessible route to the public lands surrounding and including Elk Mountain.

In 1956 Norman Palm was approached by Jack Wilson, the District Manager of the Rawlins' BLM, for the purpose of obtaining an easement across Palm lands to reach Elk Mountain where the BLM wished to establish a fire lookout tower. Norman Palm had requested that the easement contain a provision that would allow the right-of-way to revert back to him if the BLM abandoned the easement.

In a letter dated March 1, 1957 and signed by Jack Wilson, the District Manager stated in relevant part, the following:

> We do not intend to move the road from its present location, however, we would like to up-grade it somewhat and make it a little better road.

> Please note that the Easement for Right-of-Way is effective only so long as the road is used for the purpose for which it is issued, that should it be discontinued or abandoned all rights and title will still remain with you.

Also enclosed with the letter was a form of easement and a map which designated the proposed easement and described it on the map as the "Elk Mountain Fire Lookout Road."

The form of easement ultimately signed by Norman Palm was somewhat different than the one enclosed with the March 1, 1957 letter. The easement, Form No. 1242, Bureau of Land Management, is recorded at Book 368, Page 439, reception no. 341905, Carbon County, Wyoming and provides in relevant part:

GRANT OF EASEMENT AND RIGHT–OF–WAY

PALM LIVESTOCK CO. , grantor,

to the United States of America, Department of the Interior, Bureau of Land Management, grantee:

WITNESSETH, That for and in consideration of the agreement by the grantee pursuant to the <u>Acts of June 28, 1934 as amended (43 USC 315, et seq.), April 27, 1935 (16 USC 590a), and July 14, 1952 (66 Stat. 597)</u> to construct the following improvements:

| Access Road |
| --- |

the grantor does hereby grant, bargain, convey, and confirm unto the United States of America, an easement and right-of-way over the tract, lot, piece, or parcel of land situate, lying and being in the County of Carbon, State of Wyoming, more particularly described as follows:

> Sections 23 and 25 T. 20 N. R. 82 W., and more particularly described on the attached map, which is made a part hereof.

The easement and right-of-way hereby granted is for the full, free, unrestricted and quiet use and enjoyment by the grantee of the land of the grantor occupied by the said improvements for any and all purposes deemed necessary or beneficial for, or in connection with, the control, administration, or use of the public land surrounding or adjacent to the land herein described, which may be properly grazed from, serviced by or used in connection with the said land and improvements, including the right of ingress and egress to, from, and over the land of the grantor by the <u>grantee</u>, its <u>officers</u>, <u>agents</u>, <u>permittees</u>, allottees, and <u>licensees</u> <u>for the purpose of repairing</u>, <u>renewing</u>, or <u>using the said improvements</u>, or for <u>other business pertaining to the use and maintenance</u> <u>thereof</u>, and shall be appurtenant to said public land.

This grant shall be effective so long as the easement shall be actually used for the aforesaid purposes, and all rights hereunder shall revert to the grantor when and in the event the use thereof shall be discontinued or abandoned by the grantee of which due notice shall be given to the grantor by the grantee. Upon termination or abandonment of this easement, the grantee may at its option and within a reasonable time, remove any improvements constructed by it on the land hereunder.

(emphasis added). The easement was one of only two forms which the BLM was using at that time.

After Norman Palm granted the easement, the BLM extended the established logging roadway to the top of Elk Mountain. The roadway on the Palm land was improved by the addition of "water bars" and grading and leveling work. These improvements were valued at approximately $12,000.00. Since that time, however, the BLM has not performed any maintenance work on the roadway. In fact, due to erosion and lack of maintenance, the usea-

ble roadway has deviated from its original surveyed course.

The fire lookout tower was utilized only until 1962, but has not been used by the BLM since. The University of Wyoming maintains atmospheric research facilities on Elk Mountain and has been given permission by Palm Livestock to use the roadway which crosses Palm Livestock land. The University performs some minimal maintenance work on the road, but uses equipment belonging to Palm Livestock to accomplish the maintenance work.

The Safari was formed by Palm Livestock and other neighboring landowners to prevent and control the increased trespassing occurring on their private lands—most often involving hunters. The Safari charges a fee to permit individuals to hunt on its shareholders' lands and to use the roadway which crosses Palm Livestock land. Safari employs personnel to patrol these lands, particularly during the hunting season, to avert potential trespassing.

Sometime in 1983, a neighbor to Palm Livestock lands was denied access to use the roadway which crosses over Palm Livestock lands. On October 12, 1983 the Safari received an anonymous letter claiming public access to the roadway. The Wyoming Game and Fish in December, 1983 requested the BLM to investigate the right of public access to Elk Mountain—over Palm Livestock lands. These incidents and other complaints received by the defendant prompted the BLM to take action in exploring the right of public access across the Palm Livestock roadway.

In 1984 Palm Livestock erected a gate on its lands across the roadway to keep out trespassers. Thereafter, the Wyoming Wildlife Federation brought suit against both the plaintiffs and the United States. The case was ultimately dismissed in 1985 for jurisdictional reasons.

On Wednesday, September 25, 1985, the BLM published an announcement in the *Federal Register* which purported to close the roadway to public use other than by horseback or foot. Wyoming: Limited Closure of Public Lands Elk Mountain Area, 50 Fed.Reg. 38,900 (1985). This action taken by the BLM prompted plaintiffs to file the present lawsuit and seek the preliminary injunction, which was issued by this Court on October 7, 1985.

## DISCUSSION

■ Normally, the intent of the parties to a deed or easement must be determined from the language of the deed or easement if on its face it is unambiguous. *Knadler v. Adams,* 661 P.2d 1052, 1053 (Wyo.1983). In the order granting a preliminary injunction, this Court held that the easement in question was indeed unambiguous and clearly did not provide a right of public access across Palm Livestock's private lands.

■ The defendant, however, seizes upon portions of the language of the easement to claim a grant of a public right-of-way, which state that the easement and right-of-way is " ... granted ... for the full, free, unrestricted and quiet use and enjoyment by the grantee ... its officers, agents, permittees, allottees, and *licensees* ..." (emphasis added). The term "licensees," the defendant contends, "includes any member of the public who is allowed to come upon the public lands with due regard to land management decisions."

The defendant, however, concedes that the terms "permittees" and "allottees" refer to individuals holding or entering under the color of permits issued under, or allotments existing by virtue of, the Taylor Grazing Act, 43 U.S.C. § 315 *et seq.* The term "officers" refers to employees of the United States, and the term "agents" would logically refer to persons authorized by the United States to act on its behalf.

The defendant's expansive interpretation of the term "licensees" to include the general public is without merit. The rule of construction which must be applied is that an easement (as well as a deed or contract) "[m]ust be interpreted as a whole, with provisions thereof read in pari materia, and cannot be separated for the purposes of interpretation." The easement must be

considered as a whole and the intent of the parties gathered from the plain and unambiguous language contained therein. *Dawson v. Meike*, 508 P.2d 15, 18 (Wyo.1973).

When the easement is read in full, the Court is persuaded that the clear language of the entire instrument limits the United States' use of the easement to purposes connected with the administration and control of the public lands under the Taylor Grazing Act, 43 U.S.C. § 315, *et seq.;* the Soil Conservation and Domestic Allotment Act, 16 U.S.C. § 590a et seq.; and for the eradication of "Halogeton glomeratus" (poisonous weeds), Act of July 14, 1952 (66 Stat. 597) as specifically enumerated in the second paragraph of the easement.

The term "licensees" must be viewed in light of these acts and would, therefore, logically refer to a grant of grazing rights under the Taylor Grazing Act, 43 U.S.C. § 315m. Further, the principle of *ejusdem generis* is applicable as a rule of construction and provides that "general words following an enumeration of persons or things by words of a particular and specific meaning, ... must be held to apply only to persons or things of the same general kind or class as specifically mentioned." Black's Law Dictionary, 5th Ed. 1979; *People v. Dolan*, 5 Wyo. 245, 39 P. 752, 755 (1895). Therefore, the term "licensees" cannot be expanded in its meaning to encompass the general public, but is limited in meaning to the same kind or class as the words, "officers, agents, permittees, and allottees" in the administration of the public lands under the acts listed in the easement.

In addition, it is notable that the map incorporated by reference to the easement as part of the legal description, specifically refers to the road as the "Elk Mountain Fire Lookout Road," another indication of the parties' intent to limit the scope of the easement.

Even if the language of the easement were to be considered ambiguous, the parties' intent to restrict the easement and a right-of-way to the general public is even more evident and persuasive. "If the in-

tention of the grantor does not readily appear from the instrument, then the language used is to be read in light of the surrounding circumstances." *Gregory v. Sanders*, 635 P.2d 795, 800 (Wyo.1981); *In re Rennies' Estate*, 430 F.2d 1388, 1391 (10th Cir.1970).

This case is replete with evidence supporting the view that no grant of public access was ever intended by the parties. As discussed before, the BLM originally requested the easement for the purpose of establishing a fire lookout tower on top of Elk Mountain. The Form no. 1242 used for the easement is still used by the BLM but was identified by the Wyoming District Director of the BLM as a form properly used when there is to be a construction of improvements other than roadways. The BLM now uses forms which very specifically express the purpose of establishing "public" rights-of-way. It is notable that the easements granted for this same roadway traversing Union Pacific lands, dated May 7, 1957, expressly provide for public access.

Past use of the roadway by the BLM was not shown to be extensive. Further, the public traveling on this roadway did so either with the express permission of Palm Livestock/Elk Mountain Safari or were looked upon as trespassers.

## CONCLUSIONS

The easement for right-of-way granted to the United States and crossing Palm Livestock lands is unambiguous and clearly limited in scope. It does not provide a right of public access across Palm's private land.

The BLM's claim that the easement operates to establish a public roadway is an enlargement of the rights granted thereunder. Wyoming law provides that the "owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden." *Bard Ranch Co. v. Weber*, 557 P.2d 722, 731 (Wyo.1976).

■ The Court further finds and concludes that the United States' claim to a

public roadway was first openly contended in 1983 or 1984 and that plaintiffs' quiet-title action was filed within the requisite twelve-year statute of limitations period. 28 U.S.C. § 2409a; see also *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449 (10th Cir.1985). A claim under § 2409a "accrues when the plaintiff has a reasonable awareness that the government claims some interest adverse to the plaintiff's." *Id.* at 452. The adverse interest claimed by the United States is its position that the roadway should be open to the general public; this was not expressed until 1983 or 1984 and the limitations period did not begin to run until that time. The fact that a field solicitor stated in an internal memorandum in 1966 that it was his opinion that the roadway provided public access, is not sufficient to provide the plaintiff with a "reasonable awareness" of the United States' claim. See *Knapp v. United States*, 636 F.2d 279 (10th Cir.1980).

Whereas, the Court finds that the easement in question does not provide public access to the roadway traversing Palm Livestock lands, situated in Carbon County, Wyoming; sections 23 and 25, Township 20 North, Range 82 West, 6th Principal Meridian, title should be quieted in plaintiff Palm Livestock Company, as against the general public at large but subject to, however, the specific rights of the United States, its officers, agents, permittees, allottees, and licensees as defined by this Order, to use said roadway for the purposes described in the grant of easement, in the administration and control of public lands pursuant to the acts specified therein: 43 U.S.C. § 315 *et seq.;* 16 U.S.C. § 590a et seq.; and the Act of July 14, 1952, 66 Stat. 597.

If the government desires to open this roadway to the general public, it must proceed according to law to avoid an unlawful taking without compensation as prohibited by the Fifth Amendment of the United States Constitution. See also *Leo Sheep Co. v. United States*, 570 F.2d 881, rev. 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979).

NOW, THEREFORE, IT IS

ORDERED that judgment be entered in accordance with this opinion.