**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LARRY STEVEN WILKINS; WILL STANTON,

*Plaintiffs - Appellants*,

v.

UNITED STATES OF AMERICA,

*Defendant - Appellee*.

No. 25-37

D.C. No. 9:18-cv-00147-DLC

OPINION

Appeal from the United States District Court for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted November 4, 2025
Portland, Oregon

Filed December 29, 2025

Before: MILAN D. SMITH, JR., JACQUELINE H. NGUYEN, and HOLLY A. THOMAS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Quiet Title Act / Law of the Case

The panel affirmed the district court's summary judgment in favor of the government, in which the district court applied the law of the case doctrine and held that the statute of limitations had run on plaintiffs' claims seeking to quiet title on properties that they acquired in 1991 and 2004, respectively.

The properties are subject to an easement that plaintiffs' predecessors-in-interest granted to the United States. Plaintiffs initiated this action against the government in 2018 based on their concern that public use of the Easement interfered with their use and enjoyment of their properties. The district court held that plaintiffs' claims were time barred by the twelve-year statute of limitations set forth in the Quiet Title Act (QTA). This court issued (1) a memorandum disposition holding that plaintiffs' claims were time-barred and (2) an opinion holding that the QTA's statute of limitations is jurisdictional. The Supreme Court granted certiorari and reversed and remanded, holding that the QTA's statute of limitations is a non-jurisdictional claims-processing rule rather than a jurisdictional rule.

The panel held that the district court did not err in applying the law of the case doctrine to bar reconsideration of the question when plaintiffs' claims accrued. Even if the district court erred, the panel affirmed the judgment after a de novo review of the motions for summary judgment. It

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was not error for the district court to conclude that plaintiffs' claims accrued prior to August 2006 because the long history of public use of the Easement triggered the limitation period much earlier than 2006. Accordingly, the district court did not err in holding that plaintiffs had not raised a genuine dispute regarding whether their claims were timely filed, which necessarily means that the district court did not err in denying plaintiffs' cross-motion for summary judgment.

The panel further held that, assuming without deciding that equitable estoppel is available in QTA cases, the district court did not abuse its discretion by rejecting plaintiffs' equitable estoppel argument for lack of affirmative misconduct.

Finally, the panel held that the district court did not err by dismissing their second claim for relief as accruing at the same time as their first claim.

---

## COUNSEL

Jeffrey W. McCoy (argued) and Damien M. Schiff, Pacific Legal Foundation, Sacramento, California; Ethan Blevins, Pacific Legal Foundation, Bountiful, Utah; James M. Manley, Pacific Legal Foundation, Phoenix, Arizona; for Plaintiffs-Appellants.

Jacob D. Ecker (argued), Mark S. Smith, Amber Blaha, John E. Bies, and Kevin W. McArdle, Attorneys; Adam R. F. Gustafson, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; Babak Rastgoufard, Attorney, Office of the General Counsel, United States Department of Agriculture, Washington, D.C.; for Defendant-Appellee.

# OPINION

M. SMITH, Circuit Judge:

## FACTUAL BACKGROUND

Plaintiffs-Appellants Jane B. Stanton[1] and Larry Steven Wilkins (Plaintiffs) filed this action to quiet title on properties that they acquired in 1991 and 2004, respectively. The properties are subject to an easement that Plaintiffs' predecessors-in-interest granted to the United States for part of Robbins Gulch Road in 1962 (the Easement). Robbins Gulch Road is located off Highway 93 near Connor, Montana, and traverses private property for about one mile before it crosses the boundary of Bitterroot National Forest.

The deed conveyed a 60-foot easement to the United States "and its assigns" "for a road as now constructed and in place and to be re-constructed, improved, used, operated, patrolled, and maintained and known as the Robbins Gulch road, Project Number 446." The United States originally acquired the Easement to be used in connection with timber harvesting. However, the public has historically used the Easement to access Bitterroot National Forest.

In 2007, the U.S. Forest Service (Forest Service) began a nationwide process (the Travel Management Plan) to provide "clear identification of roads, trails, and areas for motor vehicle use on each National Forest." Travel Management; Designated Routes and Areas for Motor Vehicle Use, 70 Fed. Reg. 68264, 68264 (Nov. 9, 2005). The Forest Service published the Bitterroot National Forest

---

[1] Will Stanton was substituted for Jane B. Stanton after Ms. Stanton passed away while this appeal was pending.

Travel Management Planning Proposed Action Scoping Document (Proposed Scoping Document) in September 2007, which indicated that there would be no public motorized vehicle use on a portion of Robbins Gulch Road in the National Forest. Wilkins discussed his concerns about public use of the Easement with then-Darby District Ranger Chuck Oliver, and Oliver stated that Wilkins could "relax" because "Robbins Gulch Road[] is slated to be closed" through the Travel Management Plan. However, the Forest Service did not issue a final decision until 2016, and it allowed public motor vehicle use of the Easement in the summer and fall.

## PRIOR PROCEEDINGS

Plaintiffs initiated the instant action against the government in 2018 based on their growing concern with public use of the Easement, which interferes with their use and enjoyment of their properties. Before filing suit, Plaintiffs' counsel sent a letter to the U.S. Department of Agriculture Office of the General Counsel in May 2018. The Office of the General Counsel responded to the letter, stating the Forest Service's position that the Easement allows public access: "Where the national forest lands are open to the public the Forest Service may allow the public to utilize the easement for ingress and egress to the national forest as an implied licensee of the agency without the need for recitation in the easement of this use." Plaintiffs then filed their complaint, objecting to "current and ongoing excessive use of the Robbins Gulch Road by a wide range of parties, and the failure of the U.S. Forest Service to manage, patrol, and maintain this road in accordance with the intended limited use of the road for U.S. Forest Service administrative purposes." According to Plaintiffs, they relied on the Forest

Service's statements (both by Oliver and in the Proposed Scoping Document) to delay filing suit.

The complaint contained two counts. First, Plaintiffs sought to quiet title to their property to "confirm the limited scope of the 1962 easement for the Robbins Gulch Road." They alleged that "[t]he 1962 easement was not granted to the United States for general public use." Rather, they alleged "that the 1962 easement was granted only for restricted purposes [related to timber harvest] for the United States and its assigns."

Second, Plaintiffs sought quiet title to their property "to confirm and enforce the Forest Service's obligations under the 1962 easement for the Robbins Gulch Road." They alleged that the Forest Service "has an obligation to take affirmative steps to patrol and maintain the Robbins Gulch Road," but instead it "is authorizing and facilitating the current ongoing unrestricted use by the general public." According to Plaintiffs, the obligation is "to ensure that the road is secure and that unauthorized trespasses are not occurring."

The government moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) after extensive discovery. In relevant part, the government argued that the court lacked subject matter jurisdiction over Plaintiffs' claims because they were time-barred by the Quiet Title Act (QTA)'s twelve-year statute of limitations. *See* 28 U.S.C. § 2409a(g). The district court granted the motion.[2] *See Wilkins v. United States*, 2020 WL 2732251, at \*9 (D. Mont. May 26, 2020) (*Wilkins I*).

---

[2] The district court also denied Plaintiffs' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).

We affirmed in bifurcated opinions. We issued a memorandum disposition affirming the district court's holding that Plaintiffs' claims are time-barred. *See Wilkins v. United States*, 2021 WL 4200563, at \*2 (9th Cir. Sep. 15, 2021). We also affirmed the district court's holding that Plaintiffs' two claims accrued at the same time and the district court did not err by evaluating them together. *Id.* In addition, we issued an opinion upholding the QTA's statute of limitations as jurisdictional. *See Wilkins v. United States*, 13 F.4th 791 (9th Cir. 2021), *rev'd*, 598 U.S. 152 (2023).

The Supreme Court granted Plaintiffs' petition for certiorari and reversed and remanded, holding that the QTA's statute of limitations is a non-jurisdictional claims-processing rule rather than a jurisdictional rule. *See Wilkins v. United States*, 598 U.S. 152, 165 (2023).

On remand, the parties cross-moved for summary judgment on both counts. The district court granted summary judgment in favor of the government (the Summary Judgment Order), applying the law of the case doctrine and holding that the statute of limitations has run on Plaintiffs' claims. Plaintiffs timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1346(f), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review applications of law of the case doctrine for abuse of discretion." *Cont'l Ins. Co. v. Fed. Express Corp.*, 454 F.3d 951, 954 (9th Cir. 2006). "We review de novo a district court's grant or denial of summary judgment." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017). Typically, "[w]hen 'the accrual of the statute of limitations

in part turns on what a reasonable person should have known, we review this mixed question of law and fact for clear error.'" *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008) (quoting *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990)). But here, it is less clear whether we should apply the clear error standard to evaluate the district court's accrual determination. Due to the unique posture of this case, where the district court relied on the law of the case doctrine on summary judgment using its earlier decision ruling on a motion to dismiss, we review the parties' cross-motions for summary judgment, including the district court's accrual determination, de novo. Our de novo inquiry would serve no useful purpose if we applied a deferential standard of review to the underlying accrual determination because the district court used the law of the case to make that determination.[3]    Regardless, we would reach the same outcome reviewing for clear error. Last, we review a district court's rejection of an equitable estoppel argument for abuse of discretion,[4] since "estoppel is an equitable concept that is invoked by the court in its discretion." *Hoefler v. Babbitt*, 139 F.3d 726, 727 (9th Cir. 1998); *see also Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1087 (9th Cir. 2011).

---

[3] We have also reviewed accrual determinations de novo when reviewing at summary judgment in the past. *See Nevada v. United States*, 731 F.2d 633, 635–36 (9th Cir. 1984).

[4] We have also reviewed equitable estoppel claims de novo. *See Mukherjee v. INS*, 793 F.2d 1006, 1009 (9th Cir. 1986). The standard does not make a difference here, however, because Plaintiffs' claims would fail under either.

## ANALYSIS

Plaintiffs raise several challenges to the Summary Judgment Order. First, they challenge the district court's application of the law of the case doctrine. Second, they argue that the district court erred in granting summary judgment in the government's favor, and in denying their cross-motion, because it erred in its determination that there is no genuine dispute as to whether Plaintiffs' claims were untimely. According to Plaintiffs, their claims were timely, and even if they were not, the district court erred by allowing the government to raise a statute-of-limitations defense. They argue that the government should be equitably estopped from doing so. Last, Plaintiffs argue that the district court erred in determining that both counts of the complaint accrued at the same time. We address each argument in turn.

## I. Law of the Case

The law of the case doctrine "generally preclude[s] [a court] from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). In its Summary Judgment Order, the district court applied the law of the case doctrine to bar reconsideration of the question when Plaintiffs' claims accrued. It relied upon *Wilkins I* and our memorandum disposition holding that the statute of limitations had expired on Plaintiffs' claims to conclude that "the Supreme Court's decision did not disturb the lower Courts' findings with respect to the time bar."

The district court then determined that "[t]he question therefore becomes whether a finding on a motion to dismiss for lack of jurisdiction informs the analysis on cross motions for summary judgment." The district court concluded that it

does.  Specifically, the district court concluded that *Wilkins I* and our decision became the law of the case because "the record reveals no new evidence or no dispute of material fact" that "might change the law applied by the appellate court."

On appeal, Plaintiffs argue that the district court's use of the doctrine was improper.  Notably, while the government maintains that such use was proper, it argues that we need not reach the question or rely exclusively on the law of the case.  We hold that the district court did not abuse its discretion in applying the law of the case doctrine here.

There are certain factors that courts consider when determining whether to apply the law of the case doctrine. *See United States v. Jingles*, 702 F.3d 494, 502–03 (9th Cir. 2012).  Courts may depart from the law of the case when: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."[5]  *Id.* (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n. 4 (9th Cir. 2012) (en banc)).

Regarding the first factor, the parties do not argue that either *Wilkins I* or our memorandum disposition was clearly erroneous on the relevant question: whether Plaintiffs' claims were timely.  Neither the Supreme Court nor our court on remand mentioned our memorandum disposition, which held that "[t]he district court [in *Wilkins I*] did not

---

[5] The district court applied the five exceptions listed in *Thomas*, 983 F.2d at 155, but we noted in *Jingles* that "[o]ur en banc court . . . has consistently identified only three exceptions[.]"  702 F.3d at 503 n.3 (citations omitted).  However, this error was harmless.

clearly err in concluding that Appellants' claims were untimely." *Wilkins*, 2021 WL 4200563, at *2.

The parties also do not argue that there is a substantial change in the record. Nor could they. Discovery was not reopened on remand, and neither party requested supplemental discovery. In applying the law of the case doctrine, the district court determined that Plaintiffs "fail[ed] to proffer any evidence rendering the facts relied upon in *Wilkins I* and [our] decision in dispute." Instead, "[t]he evidence in the record remains the same."

The parties do, however, dispute one factor: whether intervening controlling authority makes reconsideration appropriate on remand. But Plaintiffs overread the Supreme Court's decision to say that it is intervening controlling authority that bears on the earlier determination that Plaintiffs' claims were untimely. The Supreme Court did not reverse and remand our or the district court's determination that the statute of limitations for Plaintiffs' claims has expired. Because we bifurcated our rulings, only the jurisdictional question was before the Supreme Court. *See Wilkins v. United States*, 142 S. Ct. 2776 (2022) (mem.). And while the Court clarified that QTA's statute of limitations is a non-jurisdictional claims-processing rule, it did not change the law that instructs courts on how to evaluate whether a claim pursuant to the QTA is time-barred, *see generally Wilkins*, 598 U.S. 152, which is the law that we and the district court applied to evaluate when Plaintiffs' claims accrued, *see Wilkins*, 2021 WL 4200563, at *2.

There are some differences in this case on remand, but these differences do not change the result. First, *Wilkins I* and our memorandum disposition used a different burden of proof. These earlier rulings were issued pursuant to the

government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which placed the burden on Plaintiffs to prove that their claims were timely. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Conversely, the burden is on the government to prove its non-jurisdictional statute of limitations defense at summary judgment. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007).

Second, *Wilkins I* and our memorandum disposition were evaluated pursuant to different standards. In *Wilkins I*, the district court was able to resolve factual disputes with no presumption of truthfulness attached to Plaintiffs' allegations. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). But all disputed facts must be construed in favor of the nonmoving party at summary judgment. *See Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007).

The district court discussed whether the differing standards should affect its application of the law of the case doctrine and concluded they did not. It primarily relied upon *Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042 (D. Ariz. 2021). In *Leibel*, the district court evaluated whether the law of the case doctrine applied in summary judgment proceedings on remand after we reversed its earlier ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See id.* at 1057. The *Leibel* court concluded that a court's prior ruling may be applied as the law of the case when the facts that were presumed true at the motion to dismiss stage are proven true at summary judgment. *See id.* at 1057–58.

The district court's reliance upon *Leibel* is not entirely persuasive because courts evaluating motions to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(1) do not presume facts to be true.  In *Leibel*, both the earlier decision and the decision on remand used a standard that favored the plaintiff, and the court evaluated the motion for summary judgment without any evidence on the relevant issue, making it a "purely legal" question.  *Id.* at 1058 (quoting *Bollinger v. Oregon*, 172 F. App'x 770, 771 (9th Cir. 2006)). Here, the standards point in opposite directions, and the district court was presented with plenty of evidence to review.  *See Bollinger*, 172 F. App'x at 771.

That being said, the district court also relied upon *Pubali Bank v. City National Bank*, 777 F.2d 1340 (9th Cir. 1985), which is more on point.  In *Pubali*, we evaluated a district court's summary judgment holding on remand after our court reversed the district court's ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(b). *See id.* at 1342.  The issue was whether the district court could use the earlier appellate ruling.  *See id.*  We stated that the court could "decide the motion in accordance with the law of the case, based on the appellate conclusions, if no evidence that affect[ed] the appellate ruling [wa]s offered in opposition to the summary judgment."  *Id.*  Yet we also noted that "[t]he trial court [could not] grant the motion solely in reliance on the appellate holdings" but "must examine whatever materials the defendant present[ed] in opposition to the summary judgment."  *Id.*

Here, the Summary Judgment Order demonstrates that the district court "properly examined" the Plaintiffs' material in opposition to summary judgment.  *See id.*  The district court stated that "the law of the case may be applied where the record reveals no new evidence or no dispute of material fact, 'the resolution of which might change the law applied by the appellate court.'"  The district court then

proceeded to evaluate "whether the facts relied upon at the Rule 12(b)(1) stage are in dispute."

Ultimately, the district court concluded that "Plaintiffs fail to proffer any evidence rendering the facts relied upon in *Wilkins I* and the Ninth Circuit's decision in dispute." Rather, the district court determined that "the undisputed facts," such as the historical maps, "are more than sufficient" to meet the standard for claim accrual pursuant to the QTA.

Accordingly, the district court did not abuse its discretion in applying the law of the case doctrine here, consistent with *Pubali*. Even if it did err, we still affirm the judgment after a de novo review of the motions for summary judgment, as discussed below. In *Pubali*, we determined that where "[i]t is not clear . . . whether the district court properly examined [the] . . . material in opposition to summary judgment, or simply applied the holding of [the earlier ruling] to [the] motion papers," we can "examine the problem afresh because we review a summary judgment de novo." 777 F.2d at 1342.

## II. Summary Judgment

We therefore evaluate the parties' cross-motions for summary judgment de novo.[6] Because the parties cross-moved for summary judgment, we consider two related questions: (i) whether Plaintiffs have raised a genuine dispute of material fact regarding whether their claims were untimely filed; and (ii) in the alternative, whether the undisputed facts demonstrate that Plaintiffs' claims were timely filed. We hold that the district court did not err by

---

[6] Because Plaintiffs dispute whether their claims simultaneously accrue, this section is focused on Plaintiffs' first claim. We later conclude that the district court did not err by evaluating Plaintiffs' claims together.

granting summary judgment in favor of the government because, while Plaintiffs genuinely dispute certain facts, there is no genuine dispute that their claims accrued in the 1970s based on the history of public use of the Easement, and thus, the claims were untimely filed.

The QTA's statute of limitations requires Plaintiffs to bring a case "within twelve years of the date upon which [the claims] accrued." 28 U.S.C. § 2409a(g). Accrual occurs "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id.* Because Plaintiffs filed their complaint on August 23, 2018, their claims were not timely if it accrued prior to August 23, 2006. Plaintiffs argue that their claims did not accrue until September 2006, when the Forest Service commissioned a sign to be installed along Robbins Gulch Road reading "Public Access Thru Private Lands."

According to Plaintiffs, *Michel v. United States*, 65 F.3d 130 (9th Cir. 1995) (per curiam), supplies the applicable standard to determine when a plaintiff or his predecessor in interest "knew or should have known of the [government's] claim," 28 U.S.C. § 2409a(g). Plaintiffs use *Michel* to argue that "when a quiet title claim involves a non-possessory interest such as an easement, a claim accrues when the government acts adversely to the interests of plaintiffs with respect to the easement."

However, this case is distinct from *Michel* because the *plaintiff* in that case claimed an easement over government land; here, it is the opposite: the *government* claims an easement over private land. *See Michel*, 65 F.3d at 131. In effect, Plaintiffs use *Michel* to argue that a higher standard (*i.e.*, affirmative adverse action) applies to easement-related claims such that the government must demonstrate when a

plaintiff should have known that the government's claim was contrary to the plaintiff's interest. But in other circumstances, we use a relatively lower standard: "notice of a government claim that creates even a cloud on that title may be sufficient to trigger the limitations period." *Id.* at 132.

Read in full, *Michel* does not stand for the broad easement-related assertion that Plaintiffs argue it does. *Michel* states that "[a] plaintiff's cause of action *for an easement across government land* only accrues when the government, 'adversely to the interests of plaintiffs, denie[s] or limit[s] the use of the roadway for access to plaintiffs' property.'" *Id.* (quoting *Werner v. United States*, 9 F.3d 1514, 1516 (11th Cir. 1993) (alterations in original) (emphasis added)). The court explained that "when [a] plaintiff claims a non-possessory interest such as an easement, knowledge of a government claim of ownership may be entirely consistent with [that] plaintiff's claim." *Id.* In other words, when a plaintiff claims an easement on government-owned land, the plaintiff already knows that the government has an ownership interest over that land; such claim is necessarily "entirely consistent" with their easement. *Id.* In that case, something more is required for their QTA claim to accrue. *See McFarland v. Norton*, 425 F.3d 724, 726–27 (9th Cir. 2005).

The instant case does not require anything more. We cited *Michel* in our memorandum disposition to state that "[t]o start the limitations period, the government's claim must be adverse to the claim asserted by the [plaintiffs]." *Wilkins*, 2021 WL 4200563, at *2 (alterations in original). This just means that the government's interest must *conflict with* Plaintiffs' claim; it does not mean that the government must act "in a manner *openly hostile* and adverse to a

landowner's interest."**[7]** *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989) (emphasis added).

Plaintiffs rely on *Elk Mountain Safari, Inc. v. Bureau of Land Management*, 645 F. Supp. 151 (D. Wyo. 1986), to argue to the contrary.  But *Elk Mountain*, in addition to being non-binding, is distinguishable.   In *Elk Mountain*, a landowner granted a right-of-way easement to the United States, and a successor in interest later sued the United States, alleging that the right-of-way was limited and not open to the public. *See id.* at 152.  The district court rejected the government's argument that an internal agency memorandum was sufficient to provide the plaintiff with reasonable awareness that the United States claimed an adverse interest in their property. *See id.* at 155–56.  Instead, the court concluded that the plaintiff's claim only accrued when the government "expressed" "its position that the roadway should be open to the general public." *Id.* at 156.  But, as the government argues, the instant case does not rely on internal agency documents; it relies on public information to evaluate when its interest was "expressed."

---

[7] Here, the government's claim to Plaintiffs' property can be adverse to (*i.e.*, conflict with) Plaintiffs' claim without the government taking affirmative adverse action, such as denying or limiting use of its own Easement. *See, e.g.*, *George v. United States*, 672 F.3d 942, 947 (10th Cir. 2012) (holding that "[r]ecords, not actions, were enough to put the plaintiffs on notice").  Thus, Plaintiffs' reliance on *Waibel Ranches, LLC v. United States*, 2024 WL 3384233 (9th Cir. July 12, 2024), which relies on a similar standard, is not helpful. *See id.* at \*2 (reversing a district court's determination that the plaintiffs' claims were time-barred by evaluating when the government "adopted a position in conflict" with the plaintiffs' interests).

## A.  Public Use of the Easement

We first evaluate whether the United States' actions related to the historic public use of the Easement would have alerted a reasonable landowner that the government claimed an interest in the Easement.  The record shows that the public has regularly used Robbins Gulch Road to access the National Forest since at least the 1960s.  The record also shows that both Plaintiffs were aware of such public use both when they purchased their properties and after purchasing it.  And as the government argues, a reasonable landowner with such awareness likely should have conducted further inquiry if that landowner believed their easement prohibited public use.  Accordingly, it was not error for the district court to conclude that Plaintiffs' claims accrued prior to August 23, 2006, based on the public's historic use of the Easement and the fact that the Forest Service did not act to restrict such use.

Plaintiffs counter that there is a genuine dispute here because the evidence shows that Ida Wildung, the grantor of one of the relevant Easements (and who is not a plaintiff), believed that the Easement was not meant to allow public access.  Marion Dial (another neighboring private landowner) stated in her declaration that Wildung (who is now deceased) was surprised when the Forest Service indicated in 2007 that it believed that the Easement allowed public use.[8]  According to Plaintiffs, if the grantor of the Easement did not know until 2007 that the Forest Service believed that the Easement allowed for public use, then no

---

[8] "Ida told me that they never intended to give a public road to the Forest Service. Instead, she told me that she negotiated an easement that would give the Forest Service easier access for forest management and in dealing with forest fires. She told me that the Forest Service agreed to maintain the road in exchange for an easement."

other landowner along Robbins Gulch Road could reasonably be expected to know of the government's claim that the Easement allowed for public use.

But Wildung's subjective understanding of the Easement is not enough to raise a genuine dispute of material fact "whether [Plaintiffs or their] predecessors-in-interest reasonably should have been aware of a claim by the government of interest in the roadway." *Shultz*, 886 F.2d at 1161. The record of public use here is enough to "alert[]" a reasonable landowner to "make reasonable inquiry" about their understanding of the Easement. *See Park Cnty. v. United States*, 626 F.2d 718, 721 n.6 (9th Cir. 1980). This is an objective standard. Thus, the district court did not err by concluding that "Plaintiffs' claims likely accrued sometime in the 1970's [*sic*]."

We also reject Plaintiffs' argument that even if they were aware of public access prior to 2006, there is no evidence that the public accessed Robbins Gulch Road *with the Forest Service's permission*, alerting them to the government's interest in the Easement. This argument is not persuasive because, as discussed above, we reject Plaintiffs' assertion that affirmative adverse action by the Forest Service is required here. Instead, we rely on the fact that the Forest Service was aware of such public use and allowed it, by not acting to stop it.[9] Plaintiffs' argument that the public was using the road for illegal purposes, such as trespass or underage drinking, does not move the needle.

---

[9] Plaintiffs do not argue that the Forest Service was unaware of the public use. Indeed, Plaintiffs' second claim relies on the Forest Service "authorizing and facilitating the current ongoing unrestricted use by the general public."

## B. Historic Forest Service Maps

The historic Forest Service maps are more complicated. It is undisputed that Robbins Gulch Road has been shown on official, publicly available Forest Service maps from as early as 1950.  Such maps (excluding the 1950 map) label the road as "446," which designates Robbins Gulch Road as part of the National Forest road system.  The question is whether a reasonable landowner would interpret these maps to conclude that Robbins Gulch Road is a National Forest road *that is open to the public*.

According to Plaintiffs, there is a genuine dispute whether they do so because the Forest Service's historic maps are ambiguous.  Whether the maps are ambiguous is relevant because, as Plaintiffs argue, the statute of limitations for a QTA claim does not begin to run if the United States' claim is ambiguous or vague.  *See Shultz*, 886 F.2d at 1160.  They emphasize that not all Forest System Roads are open to the public.  Rather, some Forest System roads are merely "administrative," and these roads are not open to the public.

Plaintiffs first argue that it is unreasonable to interpret the historic Forest Service maps to suggest that Robbins Gulch Road is open to the public because the Forest Service itself admitted that the maps were ambiguous regarding that question.  We reject this argument.  Plaintiffs rely on the Proposed Scoping Document, which states that certain "motorized recreation designations can be confusing and complex."  However, Robbins Gulch Road was not marked with those "confusing and complex" designations; it was designated without restrictions on the relevant 2005 map.

We similarly reject Plaintiffs' argument based on the Forest Service's webpage for the Medicine Bow-Routt

National Forest and Thunder Basin National Grassland, which directs users to consult the current Forest Service map because "not all roads/trails on GPS/maps are open for public access." Even assuming the webpage's language refers to *Forest Service* maps and not generic commercial maps, the quoted language does not demonstrate that maps of Robbins Gulch Road and Bitterroot National Forest specifically are ambiguous.

The parties then dispute the proper way to interpret the maps of Bitterroot National Forest and Robbins Gulch Road. The record includes maps from: 1950, referring to the Road as a "[g]ood motor road"; 1964, referring to the Road as a "[d]irt [r]oad"; 1972, referring to the same; 1981, referring to the Road as an "[i]mproved [r]oad" rather than a "[r]oad or [t]rail with [r]estrictions"; 1993, "[i]mproved [r]oad"; and 2005, referring to the Road as a "[l]ight [d]uty [r]oad, [d]irt." According to the government, the maps demonstrate that Robbins Gulch Road is open to the public because it is merely designated as an "improved road," despite other roads on the map being depicted as "road[s] . . . with restrictions."

However, as Plaintiffs persuasively argue, it is a question of fact whether roads outside the National Forest boundaries are noted with such restrictions, and it would be reasonable to assume that the Forest Service only noted gates in areas where it owned the underlying land, within the National Forest boundaries. For example, the 2005 map explicitly states in its legend that the listed restrictions "pertain[ ] only to Bitterroot National Forest System lands." While the other maps' legends do not contain a limiting phrase, whether the maps labeled any privately owned roads with restrictions is disputed, and a de novo review of the maps suggests that they are not clear on that question.

Thus, Plaintiffs raise a genuine dispute whether the historic Forest Service maps demonstrate that Robbins Gulch Road was open for unrestricted public access. But even still, the district court did not err by determining that "Plaintiffs' claims likely accrued sometime in the 1970's [*sic*]." "The existence of one uncontroverted instance of notice suffices to trigger the limitations period." *Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984). As discussed above, we conclude that the long history of public use of the Easement triggered the limitations period in the 1970s. Thus, the dispute regarding the historic Forest Service maps does not suffice to preclude summary judgment.

## C. The May 2006 Closure Order

On May 3, 2006, Forest Supervisor David Bull signed a special order temporarily closing the road to the public at its junction with Highway 93 because of unsafe road conditions. The government argues that this order (the May 2006 Closure Order) demonstrates that Plaintiffs were aware of its interest in the Easement for public use in at least May 2006. Forest Service regulations required the agency to implement the closure by, among other things, placing a "Road Closed" sign at the site. *See* 36 C.F.R. § 261.51(b) (2005). Bull, a forest supervisor from 2002 to 2009, testified in his deposition that the Forest Service typically acted according to its regulations.

Plaintiffs counter that there is a genuine dispute whether the May 2006 Closure Order triggered their claim's accrual. Plaintiffs argue that they and their neighbors do not recall seeing the May 2006 Closure Order or physical barriers posted along the road. Instead, Wilkins testified that when "[t]hey would put a sign down . . . at the bottom [of the

Road], at the highway, that would say road closed ahead, which means they closed it at the [National Forest] boundary," which was past the Easement on Robbins Gulch Road. And Wilkins testified that "they never would close this section of the road."

The fact that Plaintiffs do not recall the Closure Order may raise a genuine dispute as to whether the Closure Order could start the limitations period. Constructive notice may be enough to trigger the limitations period. *See, e.g.*, *Park Cnty.*, 626 F.2d at 720–21 (determining that a sign gave sufficient notice even when it was located far from the county seats that challenged the government's claim). However, that does not mean that testimony affirmatively contradicting the government's theory of notice cannot raise a genuine dispute, such as evidence that the landowners perceived the Closure Order to be inapplicable to the Easement. But we need not resolve this question here. Even if there is a genuine dispute regarding the Closure Order, it was not error for the district court to conclude that Plaintiffs' claims accrued prior to August 2006. As discussed above, the long history of public use of the Easement triggered the limitation period much earlier than 2006.

***

Thus, while Plaintiffs raise a genuine dispute regarding whether the historic Forest Service maps spurred the limitations period, and may also do so with the May 2006 Closure Order,[10] the history of public use of the Easement to

---

[10] This conclusion is slightly different than our memorandum disposition, which concluded that "[t]ogether with the historic public use of the road, the historic maps should have alerted a reasonable landowner of the government's view regarding public access of the easement more than twelve years before Appellants filed suit. And the government's

access the National Forest is enough for us to conclude that the district court did not err in its determination that "Plaintiffs' claims likely accrued sometime in the 1970's [*sic*], [but] at the latest, on May 3, 2006." Accordingly, the district court did not err in holding that Plaintiffs have not raised a genuine dispute regarding whether their claims were timely filed. This conclusion necessarily means that the district court did not err in denying Plaintiffs' cross-motion for summary judgment.

## III. Equitable Estoppel

The Supreme Court left open the possibility that equitable estoppel may be available in QTA cases in *United States v. Beggerly*, 524 U.S. 38, 49–50 (1998) (Stevens, J., concurring). *See also Wilkins*, 598 U.S. at 164. We assume without deciding that equitable estoppel is available in QTA cases, although the government urges us to find it does not.[11]

To establish that a defendant is estopped from raising the statute of limitations as a defense, a plaintiff bears the burden to establish: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). However, the district court began with the "threshold requirement[]" for equitable estoppel claims against the government, which requires affirmative misconduct. *See*

---

temporary closure of the road in 2006 was consistent with this understanding." *Wilkins*, 2021 WL 4200563, at \*2. However, our earlier ruling reviewed the district court's ruling for clear error, not de novo, and was based on a motion to dismiss.

[11] The government argues that equitable estoppel is unavailable under the QTA for the same reason that equitable tolling is unavailable.

*Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989) (en banc).

"[A]ffirmative misconduct" must go beyond "mere negligence" and "cause a serious injustice." *Id.* (quoting *Wagner v. Dir., Fed. Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir. 1988)). "There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances." *Id.* But affirmative misconduct generally requires "an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party." *Id.* (citation omitted). Instead, affirmative misconduct includes a "deliberate lie" or "pattern of false promises." *Mukherjee v. INS*, 793 F.2d 1006, 1009 (9th Cir. 1986).

We conclude that the district court did not abuse its discretion by rejecting Plaintiffs' equitable estoppel argument for lack of affirmative misconduct.[12]

According to Plaintiffs, the Forest Service and its officials affirmatively concealed "vital information" from the landowners even if it did not intend to mislead them. Specifically, Plaintiffs argue that the government "concealed that [it] believed any quiet title claim had accrued," that it "apparently did not believe its statements that previous maps

---

[12] The district court declined to consider the remainder of the factors under the equitable estoppel test because it concluded that there is no affirmative misconduct here. We do not review the district court's rejection of Plaintiffs' equitable estoppel argument de novo because the district court addressed it for the first time at summary judgment. Thus, there is no concern with the district court's application of the law of the case doctrine.

were confusing," and "that the agency had no intention of resolving any dispute without litigation." Plaintiffs support their argument with the statement from then-Darby District Ranger Oliver to Wilkins in 2007 that he could "relax" because "Robbins Gluch Road[] is slated to be closed" in the Travel Management Plan. [13] Recall that the Proposed Scoping Document indicated that there would be no public motorized vehicle use on a portion of Robbins Gulch Road in the National Forest.

According to Plaintiffs, they relied on the Forest Service's statements (both by Oliver and in the Proposed Scoping Document) to delay filing this suit. They argue that "[i]f [they] had not waited over eight years for the Forest Service to complete the travel management process, and had not relied on District Ranger Oliver's statements when Mr. Wilkins brought up his concerns, they would have filed in 2007, about a year after the 2006 Road Closure Order . . . and fewer than two years after the final pre-travel management rule map was published."

The district court rejected Plaintiffs' argument that the Proposed Scoping Document is affirmative misconduct sufficient to establish equitable estoppel. It determined that "the travel management notice upon which Plaintiffs rely proposes only that parts of the road will be closed to motorized, and not public, access." It further noted that the relevant portion of the road (mile 1.5 to mile 3.1) did not include the Easement.

The district court similarly rejected Plaintiffs' other arguments. Regarding Oliver's statement that Wilkins could

---

[13] They also rely on Forest Service statements that its historic maps are ambiguous. As discussed above, we reject this argument.

"relax," the district court determined that "[t]he facts of this case are readily distinguishable from [a] pervasive pattern of deception," and "without more, [it could not] say that Oliver's statements—even if true—justify estopping the Government." It also concluded that Wilkins had not "acted diligently to protect his own interests," and "[h]ad Wilkins properly consulted the scoping document, he would have seen that the proposal did not close the entirety of Robbins Gulch Road to public use." *See Lavin v. Marsh*, 644 F.2d 1378, 1384 (9th Cir. 1981) (noting that courts examine "whether the citizen dealing with the government has acted diligently to protect his own interests").

The district court did not abuse its discretion by rejecting Plaintiffs' arguments. Perhaps most significantly, the release of the Proposed Scoping Document and Oliver's conversation with Wilkins about that document did not occur until 2007. As discussed above, there is no genuine dispute whether Plaintiffs' claims accrued in the 1970s, meaning that the limitations period had expired long beforehand. And as the government argues, although "equitable estoppel can be used to stop a limitations period from continuing to run after it has already begun to run," *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001), *overruled on other grounds by Smith v. Davis*, 953 F.3d 582, 599 (9th Cir. 2020) (en banc), it cannot be used to restart the limitations period on a claim that has already expired.

Plaintiffs' arguments are relevant only if their claims began to accrue with the May 2006 Closure Order, which is not supported by the record. And regardless, even if Plaintiffs' claim accrued in 2006, there is no genuine dispute about affirmative misconduct here. There is no evidence of a deliberate lie or pattern of false promises—by Oliver specifically or the Forest Service generally—that were

intended to delay a suit by Plaintiffs.  There is no evidence that they were even aware of the risk of a lawsuit by Plaintiffs in 2007.  Wilkins testified that he "started reading the easement" around 2017, and Stanton testified that she did not know about the Easement until 2018.

## IV.   Simultaneous Accrual

Last, Plaintiffs argue that the district court erred by dismissing their second claim for relief, which sought quiet title to their property "to confirm and enforce the Forest Service's obligations under the 1962 easement for the Robbins Gulch Road," as accruing at the same time as their first claim.  The district court dismissed the claim for two reasons.  First, it explained that "[t]o the extent Plaintiffs' second claim sought to impose an affirmative action duty on the Forest Service to 'maintain and patrol' Robbins Gulch Road," that "allegation seem[ed] to take th[e] claim outside of the QTA."   Second, the district court stated that it "scoured" Plaintiffs' complaint but found "no allegation that the Forest Service failed to 'patrol' or 'maintain' against any threat other than public use."

We hold that the district court did not err by dismissing the claim.   First, as the government argues, Plaintiffs forfeited this argument by not renewing it on remand. Second, even if Plaintiffs had not forfeited the argument, the district court did not err in dismissing the claim.  As we stated in our memorandum disposition, "[a]ll of Appellants' claims—despite being organized as two separate causes of action in the complaint—were ultimately premised on the public's alleged unauthorized use of the road."  *Wilkins*, 2021 WL 4200563, at *2.  And therefore, "[t]he claims . . . accrued at the same time—when a reasonable landowner should have known of the government's position that its

easement allowed for public use of the road." *Id.* The claim is "premised on patrolling and maintaining the road *against public use* and thus . . . accrued at the same time as the public use claim." *Id.* (emphasis in original).

It is illogical to argue that Plaintiffs believed that the government had a duty to maintain the Easement against excessive public use while also arguing that they believed that the Easement did not allow public use at all. While Plaintiffs argue that their second claim encompasses "problems beyond mere public use," including "trespassing, illegal hunting, speeding and disrespectful activities," the complaint is focused on addressing "current ongoing unrestricted use by the general public."

## CONCLUSION

The district court's order is **AFFIRMED**.